[No. 36265. Department One. January 17, 1963.]

BILL M. WALDORF *et al., Appellants,* v. CHARLES T. COLE *et al., Respondents.**

*James J. Keesling,* for appellants.

*Youngberg & Sorrel* and *Charles T. Cole,* for respondents Cole *et al.*

*A. C. Van Soelen* and *John P. Harris,* for respondent City of Seattle.

*Miracle, Treadwell & Pruzan,* for respondents Kinerk.

HILL, J.—This is a boundary dispute arising from an approximate 15-foot shortage on the ground compared with the distance shown on the recorded plat.

Block 2 of the Replat of Blocks 1 and 2, Lake Shore View Addition, as it appears on the plat, has 20 lots each having

*Reported in 377 P. (2d) 862.

a 30-foot frontage on 45th Ave. N. E., and 20 lots each having a 30-foot frontage on 46th Ave. N. E. These are north and south streets. Each lot is shown as having a depth of 120 feet and, there being no alley, the block, as platted, is 240 feet in its east-west dimension.

On the ground, the north line of the block (being the south line of East 103rd St.) between the east line of 45th Ave. N. E., as presently established, and the west line of 46th Ave. N. E., as presently established, is approximately 230 feet, a shortage of 10 feet and the south line of the block (being the north line of East 100th St.) is approximately 220 feet, a shortage of 20 feet.

The plaintiffs, Bill M. Waldorf and wife, have a 90-foot frontage on 45th Ave. N. E. Title was acquired through a deed which conveyed:

"Lots twenty-four (24), twenty six (26) and twenty eight (28)[1], Block two (2), Replat of Blocks 1 and 2, Lake Shore View Addition as recorded in volume 13 of Plats, page 69, records of King County, State of Washington, EXCEPT that portion of the above described premises, if any, lying within 45th Avenue Northeast as now established.

"SUBJECT, however, to easement for electric transmission line, as granted by instrument dated October 14, 1942, recorded October 30, 1942 in volume 2089 of deeds, page 236, . . ."

Both the exception and the easement have a significance, which will appear hereafter.

The defendants, Leo M. Gunderson and his wife; and the defendants, Charles T. Cole and his wife, each own property having a 60-foot frontage on 46th Ave. N. E. The Waldorf property and the Cole property have a common boundary 16.73 feet in length;[2] and the Waldorf property and the Gunderson property have a common boundary of 60 feet.[2] The other property owner, with whom the Waldorfs have a common boundary of 13.27 feet, is not a party to the action.

The east-west shortage, as we have indicated, increases

---

[1]Even-numbered lots face on 45th Ave. N. E.; odd-numbered lots face on 46th Ave. N. E.

[2]This is, of course, the east boundary of the Waldorf property and the west boundary of the Cole and Gunderson properties.

from 10 feet at the northern boundary of the block to 20 feet at the southern boundary. It varies, of course, between the north and south lines of the Waldorf property; but, over

SHOWING PORTION OF BLOCK 7 LAKE SHORE VIEW ADDN AND PORTION OF BLOCK 2, OF REPLAT OF BLOCKS 1 & 2, LAKE SHORE VIEW ADDN, SEATTLE, WASH.

The above drawing, an adaptation of one of the exhibits, is placed here in the hope that it may be of assistance in understanding the opinion. The center line of 45th Ave. N. E., as shown here, was supposed by the platers to be the north-south center line of Section 34, Township 26 North, Range 4 E.W.M., and is the west line of their plat. Its course from the point of beginning of the plat is, as indicated, S 0° 8' East. That point of beginning (the quarter corner of Sections 27 and 34) is indicated at the top of the drawing. It is not placed according to scale, being by the plat some 1289.57 feet north of the center line of E. 100th St., whereas, using the scale of the exhibit, it is only about half that distance. We have also added the monument 14.23 feet north of the center line of E. 100th St., which is referred to in the description by which the defendants Cole acquired title as being at the intersection of 45th Ave. N. E. and E. 100th St. on a course S 1° 06' 20" East from the point of beginning.

If that course is correct for the north-south center line of Section 34, and the center line of 45th Ave. N. E., the reader can then visualize the center line of 45th Ave. N. E., drawn from the point of beginning to the monument in E. 100th St., and the reason for the shortage complained of is readily apparent. (The east-west street shown on the exhibit is now N. E. 100th St., but we have continued to designate it as E. 100th, as all witnesses referred to it in that way, as did the trial court in his findings.)

the area with which we are concerned it is approximately 15 feet. Thus where the plat shows 240 feet, with the lots fronting on 45th Ave. N. E. and 46th Ave. N. E., each having an east-west dimension of 120 feet, there is only 225 feet between the east line of 45th Ave. N. E. and the west line of 46th Ave. N. E.

The Waldorfs, asserting their rights to a full east and west dimension of 120 feet, attempted to build a fence along their claimed east line and were prevented by the defendants Cole. The Waldorfs then commenced this action and, in their fourth-amended complaint, ask for a decree,

". . . establishing on the ground the location of the streets 45th Avenue N. E. and 46th Avenue N. E. of said City of Seattle and the location on the ground of the boundaries of the premises of all of the parties hereto;"

The trial court proceeded on the theory that 45th Ave. N. E. and 46th Ave. N. E. were properly established and that the parties, and their predecessors in interest, by acquiescence, agreed on a line 150 feet west of the center line of 46th Ave. N. E. (which would be 120 feet west of the westerly margin of 46th Ave. N. E.), as now established, and approximately 105 feet east of the easterly margin of 45th Ave. N. E., as presently established. This gave the plaintiffs an east-west dimension of approximately 105 feet and the defendants an east-west dimension of 120 feet.

The plaintiffs have appealed, urging first that the evidence does not establish a line by acquiescence; and, second, that the shortage should have been apportioned.

We agree with their first contention, and do not pass upon the second.

■ While we suspect that the trial court reached the right result, we must agree with the plaintiffs (appellants) that it cannot be justified on the basis of acquiescence. The court, in *Thomas v. Harlan* (1947), 27 Wn. (2d) 512, 518-19, 178 P. (2d) 965, 968-969, 170 A.L.R. 1138, defined acquiescence as follows:

"It is a rule long since established that, if adjoining property owners occupy their respective holdings to a certain line for a long period of time, they are precluded

from claiming that the line is not the true one, the theory being that the recognition and acquiescence affords a conclusive presumption that the used line is the true boundary. Most courts have laid down the rule that the time required to elapse before a line is established, is the time necessary to secure property by adverse possession. . . .

"In the absence of an agreement to the effect that a fence between the properties shall be taken as a true boundary line, mere acquiescence in its existence is not sufficient to establish a claim of title to a disputed strip of ground. *Dibirt v. Bopp,* 4 Cal App. (2d) 541, 41 P. (2d) 174. . . ."

Or, as stated by Judge Olson in *Scott v. Slater* (1953), 42 Wn. (2d) 366, 368, 255 P. (2d) 377-378:

". . . The pertinent rule is that, where a boundary has been defined in good faith by the interested parties and thereafter for a long period of time acquiesced in, acted upon, and improvements made with reference to the line, such a boundary will be considered the true dividing line and will govern. Whether or not the line so established is correct is immaterial. *Mullally v. Parks,* 29 Wn. (2d) 899, 906, 190 P. (2d) 107 (1948), and cases cited.

"The period of time which must elapse before a boundary line is established by acquiescence is the same as is required to secure property by adverse possession. *Thomas v. Harlan,* 27 Wn. (2d) 512, 518, 178 P. (2d) 965, 170 A. L. R. 1138 (1947). In this case, that period is ten years. RCW 4.16.020 [*cf.* Rem. Rev. Stat., § 156]. See 23 Wash. L. Rev. 131."

There is here a complete lack of proof of a well-defined boundary between the properties of the parties to this action, or of mutual acquiescence in any boundary. The 15 feet, which the plaintiffs were claiming at the time of trial, was apparently not used and was essentially in its original condition. The trial court deemed the strip over which the litigation was waged as of inconsequential value and termed the dispute over it "ridiculous."

The only improvement in the area was a rockery built by Waldorf in 1955 against a dirt bank. This, it is conceded, is on Waldorf's property; but the defendants urge that it was on the true boundary line and represented Waldorf's own idea of his boundary line at that time. This Waldorf denied.

If it could be said that the parties regarded this as a boundary line and acquiesced in it, such acquiescence had continued for less than the requisite period of 10 years. See *Scott v. Slater, supra.*[3]

No acquiescence in a definite line for the requisite period having been established, the judgment must be set aside and the matter returned to the trial court for further consideration and the reopening of the case for additional evidence, if desired.

We decline to pass on the issue of whether there should have been an apportionment of the disputed strip between the parties.

There is heated contention as to whether the plaintiffs (appellants) raised the issue in the trial court. The theory of equitable apportionment was suggested in a memorandum of authorities submitted by the plaintiffs' counsel August 13, 1959, with specific reference to an allegation contained in one of the earlier complaints, which alleged that the mislocation of Sand Point Way was the cause of the shortage. The fourth-amended complaint, on which the case was tried, made no reference to the mislocation of Sand Point Way, and contains no request for apportionment. Apportionment was, however, referred to in a brief submitted at the time of trial (August, 1961), but there was nothing in the presentation of the case which indicated that the plaintiffs had such a theory in mind. The main idea seemed to be to get 46th Ave. N. E. moved 15 feet to the east, which would give the block a width of 240 feet and permit the plaintiffs and defendants to each have 120 feet east and west.

---

[3]Evidence covering the statutory period which might have been persuasive on the issue of acquiescence would have been the attitude of the grantors of the plaintiffs and of the defendants during the period subsequent to October 14, 1942, when poles were maintained on the easement to which reference was made in the plaintiffs' deed.

These poles erected supposedly on the easterly two feet of Lots 14 through 40 of Block 2 (the lots having frontage on 45th Ave. N. E.) pursuant to the easement granted, were all more than 120 feet west of the west line of 46th Ave. N. E. No testimony by the predecessors in title of either the plaintiffs or defendants was presented.

Certainly, we find nothing in the record to show that the apportionment now proposed[4] was presented to the trial court; nor do we find any evidence in the record which would require such an apportionment.

Since this case must be returned to the trial court for further consideration, we would point out that apportionment should not be resorted to merely because there is a shortage. There are numerous possibilities, which have not been satisfactorily explored, that could be decisive of where this disputed boundary should be established.

Whether the trial court can make any finding on the present record that warrants a determination of the location of the boundary line between the plaintiffs and the defendants, we seriously doubt. Some comments on the record, or the lack of it, for the purpose of determining the line to which these litigating property owners are entitled may be helpful. The defendants apparently acquired title by conveyances, which made no reference to lot number but described the properties by metes-and-bounds descriptions by which they acquired a full 120 feet on the east and west dimension.[5]

If the common grantor of the tracts, with which we are concerned, disregarding lot designations, conveyed to

---

[4] The appellants now urge in their brief that the trial court should be directed to "equitably apportion the shortage on the ground by re-locating 46th Ave. N. E. easterly a distance equal to one-half the total shortage so that the Kinerk 240 ft. lot bears one-half the shortage and the 120 foot lots of Waldorf, Cole and Gunderson each bear one-fourth of the total shortage."

The Kinerk lot, to which reference was made, was Lot 7, Block 7, Lake Shore View Addition (not even in the same plat as the property of the plaintiffs and defendants), which lot was on the east side of 46th Ave. N. E. and extended 240 feet easterly to the west line of Sand Point Way. The Kinerk property occupied a position on 46th Ave. N. E. corresponding to the south 60 feet of the Waldorf property on 45th Ave. N. E.

[5] We say "apparently" because the only deed to the defendants in evidence is that from the Gundersons to the Coles. However, the finding of fact (No. XIV) which described the Gunderson property and to which no error is assigned, uses the same form of description; that finding, however, unquestionably is in error in limiting the Gundersons to 43.27 feet measured north and south—it being conceded that they have 60 feet.

those purchasing property fronting on 46th Ave. N. E. by metes and bounds (describing a full 120 feet west of the west line of 46th Ave. N. E.), and thereafter conveyed to property owners on 45th Ave. N. E. by lot and block numbers, the metes-and-bounds descriptions would prevail, the full 120 feet having been first conveyed thereby. See *Sorensen v. Mosbacher* (1930), 210 Iowa 156, 230 N. W. 656; *Nattin v. Glassell* (1924), 156 La. 423, 100 So. 609; *Hruby v. Lonseth* (1911), 63 Wash. 589, 116 Pac. 26; 1 Patton, Titles § 158, at 424 (2d ed. 1957); 97 A.L.R. 1227, 1229-1232 (1935); 11 C. J. S., Boundaries § 124, at 738 (1938). This is only a possible solution, but this aspect of the case, dependent as it is upon what is disclosed by the respective chains of title, is worthy of investigation.

Another, and the most likely, solution is suggested by the trial court's finding No. 16 which is:

"Expert testimony of witnesses showed that the angle of the westerly margin of the original plat and the replat of Blocks 1 and 2 of Lake Shore View Addition to the City of Seattle varied from the King County aerial survey line approximately 30 minutes. This difference results in a deficiency on the ground from nothing at the quarter corner of Sections 27 and 34, Township 26 N., Range 4 E.W.M., to approximately 21 feet, more or less, at the southerly boundary of Block 2, Replat of Blocks 1 and 2, Lake Shore View Addition to the City of Seattle."[6]

If the "King County aerial survey line" was the government survey line, this could be decisive of the case and would explain the exception in the plaintiffs' deed.[7]

We ventured the assertion that this was the most likely solution, because the record shows the following discrepancies with reference to the course of the west line of the plat, which is the center line of 45th Ave. N. E., and the north-south center line of the section in which this property is located:

---

[6]This is one of those findings which states what the testimony was, but gives no indication of whether the trial court believed the testimony.

[7]" . . . EXCEPT that portion of the above described premises, if any, lying within 45th Avenue Northeast . . . "

A. The west line of the original plat of Lake Shore View Addition ran from the quarter corner, between sections 27 and 34, S. 0° 12′ E. 2619.44 feet to the center of section 34. This plat was filed May 9, 1906.

B. The west line of the replat of Blocks 1 and 2 ran from the same quarter corner S. 0° 08′ E. 1289.57 feet to the center of McLaughlin Street (now E. 100th St.). This plat was filed August 22, 1906.

C. The west line of the replat of Blocks 3 and 4 ran from a point in the center line of McLaughlin Street (now E. 100th St.) S. 0° 08′ E. 1320 feet to the center of the section. This plat was filed August 25, 1906.

D. The description in the deed from the Gundersons to the Coles starts at the same quarter corner as A and B and runs "south 1° 06′ 20″ east a distance of 1276.14 feet to a monument at intersection of East 100th and 45th Avenue Northeast." From the record we find that this monument is 14.23 feet north of the center line of East 100th Street.

If the line running S. 1° 06′ 20″ east from the common quarter corner is the center line of 45th Ave. N. E., as now established, it would be—at a distance of 1320 feet from the quarter corner—approximately 20.85 feet further east than a line running S. 0° 12′ east from the same point of beginning. This would account for the 15-foot shortage, in the area where the property of the plaintiffs and defendants is located, assuming, as the trial court found, that 46th Ave. N. E. is properly located in accordance with the plat.

The survey on which the defendants Coles' description[8]

---

[8]Coles' description, with our parenthetical assumptions, is as follows:
"That portion of Block 2, REPLAT OF BLOCKS 1 AND 2, LAKE SHORE VIEW ADDITION TO THE CITY OF SEATTLE, according to plat recorded in Volume 13 of Plats, page 69, records of said county, described as follows: Beginning at the quarter corner between Section 27 and Section 34, Township 26 North, Range 4 E.W.M., thence south 1°06′20″ east a distance of 1276.14 feet to a monument at intersection of East 100th and 45th Avenue Northeast [this would be the center line of 45th Ave. N. E., as now established and the center line of the section; the monument being 14.23 feet north of the center of East 100th St.]; thence north 89°52′ east a distance of 279.30 feet [this covers the east 30 feet of 45th N. E. and the west 30 feet of 46th N. E. and 219.30 feet along the south line of Block 2—a shortage of 20.70 feet]; thence north 0°08′

was based would seem to bear this out, as its courses indicate that 46th Ave. N. E. is parallel to the west line of the plat and not to 45th Ave. N. E., as established on the actual center line of the section.

This would indicate that 46th Ave. N. E. is established exactly as shown on the plat; that the shortage did not extend to the property on the east side of 46th Ave. N. E.; and that if apportionment is ultimately applied, it should not extend beyond Block 2.

Whether the exception in the deed, the street being properly placed and the plat being in error, was intended to cover this obvious shortage, the plaintiffs' grantors and those who first used this form of exception might cast some light.

No line by acquiescence having been established by the evidence, the judgment appealed from is vacated and the cause remanded to the superior court for further proceedings. Costs on this appeal will abide the ultimate conclusion of the litigation.

FINLEY, WEAVER, and ROSELLINI, JJ., concur.

---

west a distance of 152.5 feet [this is along the center line of 46th N. E., and is parallel with the west line of the plat as shown on the plat and 300 feet east therefrom; the distance covered is 15.77 feet of the north half of E. 100th St. and 136.73 feet north of the south line of Block 2]; thence south 89°52' west a distance of 30 feet to true point of beginning [this would be a point on the west line of 46th Ave. N. E., a distance of 136.73 feet northerly from the Southeast corner of Block 2]; thence south 89°52' west a distance of 120 feet; thence north 0°08' west a distance of 60 feet; thence north 89°52' east a distance of 120 feet; thence south 0°08' east a distance of 60 feet to true point of beginning [this is a tract 120 x 60 with a frontage of 60 feet on the west line of 46th Ave. N. E.];  . . . "