[No. 38393.    En Banc.    November 30, 1967.]

E. WAYNE LAMM *et al., Respondents,* v. MICHAEL F. McTIGHE *et al., Appellants.*\*

*Reported in 434 P.2d 565.

*Burkheimer, Cavender, Wyman & Curtis* and *Michael S. Curtis,* for appellants.

*Robert L. Anderson* and *Roberts & Anderson,* for respondents.

HAMILTON, J.—A boundary dispute between adjoining property owners resulted in this appeal.

Plaintiffs (respondents) are the owners of a 5-acre tract of land adjoining and lying west of a similar 5-acre tract owned by defendants (appellants). The north-south line between the respective properties is the boundary in question. Plaintiffs assert the line to be approximately 15.5 feet easterly of where defendants contend it to be. Since the properties are both 660 feet in depth the disagreement involves ownership to a strip of ground approximately 15.5 feet wide by 660 feet deep, running north and south. When action (fencing and barricading the disputed strip) followed words, plaintiffs initiated this litigation seeking to quiet title to the strip. Because the true line—according to survey—lay where defendants contended it to be, plaintiffs' claim to the disputed area rested upon allegations of adverse possession and/or acquiescence and recognition.

Trial was had before the court sitting without a jury. The trial judge, after hearing the testimony and viewing the premises, found that plaintiffs, defendants, and their respective predecessors in interest had mutually recognized and acquiesced in the boundary line claimed by plaintiffs. The trial judge accordingly entered judgment quieting title to the disputed strip in plaintiffs. On appeal defendants

contend the evidence adduced does not factually or legally support the court's judgment.

Our review, upon the assignments of error as made, starts from the premise that when a cause is tried to the court sitting without a jury, the findings of fact made by the trial court cannot be disturbed by this court if there be substantial evidence to support such findings, even though as a trier of fact we might have made different findings. *Lumber Mart Co. v. Buchanan*, 69 Wn.2d 658, 419 P.2d 1002 (1966); *Western Steel Bldgs., Inc. v. Universal Carloading & Distrib. Co.*, 68 Wn.2d 522, 413 P.2d 954 (1966); *Hollingbery v. Dunn*, 68 Wn.2d 75, 411 P.2d 431 (1966); *Industrial Electric-Seattle, Inc. v. Bosko*, 67 Wn.2d 783, 410 P.2d 10 (1966).

In the instant case, the chronology of events leading to the trial court's judgment are revealed by the evidence, as follows:

Both of the properties in question were purchased in 1934 by the predecessors of the present owners from a common grantor—the Merrick estate. People by the name of Pentecost purchased the westerly tract, occupied it as residence property, and held it until 1962, when they conveyed it to plaintiffs. A Mr. and Mrs. Vail purchased and likewise occupied the easterly tract, which, after several intervening changes in ownership, was acquired by the defendants in 1945. Both properties were bounded on the south by a road, now known as Southeast 128th Street. In 1934, Mr. Vail, Mr. Pentecost, Mr. Pentecost's brother-in-law (a Mr. Hale), and an agent for the Merrick estate undertook to locate the southwest corner of the Vail tract, which would be the southeast corner of the Pentecost tract. They did this by chaining 330 feet west from a survey stake located at the southeast corner of the Vail property. A stake was then driven to mark the corner so established.

Sometime between 1936 and 1938, Mr. Vail and Mrs. Pentecost had a conversation concerning the desirability of a more definitive marking of the division between their properties so that in clearing portions of their land the Pentecosts

would not infringe upon the Vail property. Mr. Vail then indicated he would erect a fence between the properties. This he did, commencing the fence at the point of the stake at the southwest corner of his property, which had been supplemented by a power pole in 1938, and running it north to a marker located at the northwesterly corner of his property. This fence consisted of two strands of smooth wire strung upon cedar posts. Thereafter, the Pentecosts cleared portions of the southerly half of their property up to the fence line, planted some berry bushes, mowed some of the grass, and occasionally utilized a strip adjacent to the fence line as a roadway for fuel deliveries.

The defendants acquired the Vail property in 1945. In 1946, the Vail fence having fallen into disrepair and having virtually disappeared, the defendants erected a wire-mesh fence on substantial posts commencing at the power pole, set in 1938, and following the same general course of the Vail fence. At the same time, defendants collaborated with their neighbor to the east in fencing the boundary between their respective properties. Whether defendants were fully aware of the Vail fence when they erected the wire-mesh fence is in dispute; however, the Pentecosts continued the use of their property up to the new fence as before.

Plaintiffs purchased the Pentecost tract in 1962. Thereafter, in 1963, defendants had a survey made which revealed the pertinent fence line to be approximately 15.5 feet east of the surveyed boundary line between the respective tracts. In 1964, defendants constructed a second fence along the survey line and barricaded the disputed strip. This action followed.

The trial court found (a) the Vail fence was erected in 1937 as a boundary fence for the purpose of establishing the boundary line between the respective properties; (b) defendants erected the 1946 wire-mesh fence along the same general line as the Vail fence and between the same corner markers and intended it as a boundary fence; (c) that the Pentecosts during their occupancy between 1934 and 1962, and the plaintiffs thereafter, considered and

treated the respective fences as the boundary between the tracts. From these findings, the trial court concluded the boundary claimed by plaintiffs to have been established by recognition and acquiescence for the required period of time.

We are satisfied the underlying findings of the trial court are supported by substantial, though conflicting, evidence. The fact that the evidence may be subject to differing connotations does not authorize us to re-evaluate the evidence or substitute our factual interpretation for that of the trial court. *Hollingbery v. Dunn, supra.* We accordingly will not disturb such findings of fact. The question remaining, then, is whether the underlying findings of fact support the trial court's conclusion of law with respect to the applicability of the doctrine of boundary recognition and acquiescence.

We believe they do.

Boundaries between adjoining properties, at odds with the true boundary as revealed by subsequent survey, may be established, under appropriate circumstances, through the following doctrines, all of which have been recognized in this state: (1) Adverse possession, *Scott v. Slater,* 42 Wn.2d 366, 255 P.2d 377 (1953); (2) parol agreement of the adjoining landowners, *Rose v. Fletcher,* 83 Wash. 623, 145 Pac. 989 (1915); (3) estoppel in pais, *Thomas v. Harlan,* 27 Wn.2d 512, 178 P.2d 965, 170 A.L.R. 1138 (1947); (4) location by a common grantor, *Strom v. Arcorace,* 27 Wn.2d 478, 178 P.2d 959 (1947); and/or (5) mutual recognition and acquiescence in a definite line by the interested parties for a long period of time, *Farrow v. Plancich,* 134 Wash. 690, 236 Pac. 288 (1925); *Thomas v. Harlan, supra; Scott v. Slater, supra; Waldorf v. Cole,* 61 Wn.2d 251, 377 P.2d 862 (1963); *Houplin v. Stoen, ante* p. 131, 431 P.2d 998 (1967).[1]

[1]*See, also,* Establishment of boundary line by oral agreement or acquiescence, 69 A.L.R. 1430; same subject, 113 A.L.R. 421; Fence as factor in fixing location of boundary line, 170 A.L.R. 1144; *Boundary Location by Agreement and by Acquiescence,* 12 Baylor L. Rev. 93 (1960); *Boundary by Acquiescence,* 3 Utah L. Rev. 504 (1952-53); *Real Property: Acquiescence in Lieu of Adverse Possession in Boundary*

Here we are concerned only with the latter doctrine, about which we have said in *Thomas v. Harlan, supra,* at 518:

It is a rule long since established that, if adjoining property owners occupy their respective holdings to a certain line for a long period of time, they are precluded from claiming that the line is not the true one, the theory being that the recognition and acquiescence affords a conclusive presumption that the used line is the true boundary. Most courts have laid down the rule that the time required to elapse before a line is established, is the time necessary to secure property by adverse possession. [Citing cases.]

In the absence of an agreement to the effect that a fence between the properties shall be taken as a true boundary line, mere acquiescence in its existence is not sufficient to establish a claim of title to a disputed strip of ground. . . .

In all cases, it is necessary that acquiescence must consist in recognition of the fence as a boundary line, and not mere acquiescence in the existence of a fence as a barrier.

Or, as stated in *Scott v. Slater, supra,* at 368:

The pertinent rule is that, where a boundary has been defined in good faith by the interested parties and thereafter for a long period of time acquiesced in, acted upon, and improvements made with reference to the line, such a boundary will be considered the true dividing line and will govern. Whether or not the line so established is correct is immaterial. *Mullally v. Parks,* 29 Wn. (2d) 899, 906, 190 P. (2d) 107 (1948), and cases cited.

The period of time which must elapse before a boundary line is established by acquiescence is the same as is required to secure property by adverse possession.

*See, also, Waldorf v. Cole, supra.*

■ From the foregoing cases, as well as others, in which we have dealt with the doctrine, it may be gleaned that the following basic elements must, at a minimum, be shown to

---

*Line Cases,* 8 Okla. L. Rev. 486 (1955); Browder, *The Practical Location of Boundaries,* 56 Mich. L. Rev. 487 (1957-58); Ellis, *Boundary Disputes in Washington,* 23 Wash. L. Rev. 125 (1948).

establish a boundary line by recognition and acquiescence: (1) The line must be certain, well defined, and in some fashion physically designated upon the ground, *e.g.,* by monuments, roadways, fence lines, etc.; (2) in the absence of an express agreement establishing the designated line as the boundary line, the adjoining landowners, or their predecessors in interest, must have in good faith manifested, by their acts, occupancy, and improvements with respect to their respective properties, a mutual recognition and acceptance of the designated line as the true boundary line; and (3) the requisite mutual recognition and acquiescence in the line must have continued for that period of time required to secure property by adverse possession.

■ The existence of an express agreement between adjoining landowners resolving an uncertainty in or dispute about the location of the true boundary line—the touchstone in the establishment of boundaries by parol agreement—while often present in the establishment of boundaries by recognition and acquiescence, is not an indispensible element in the application of that doctrine. It is sufficient to bring the doctrine into play if the adjoining parties in interest have, for the requisite period of time, actually demonstrated, by their possessory actions with regard to their properties and the asserted line of division between them, a genuine and mutual recognition and acquiescence in the given line as the mutually adopted boundary between their properties. This approach is founded upon the truism that actions are often, if not always, stronger talismans of intentions and beliefs than words. Thus it is sometimes said by the various authorities in discussing the subject that the acts and conduct of the parties, carried on over a long period of time, give rise to an implied agreement fixing the location of the common boundary between their properties, ergo, the statute of frauds is not involved since the purpose is to fix the identity of the respective properties rather than to transfer ownership.

The essential elements are abundantly present under the evidence presented in this case. As the trial court found,

and as the testimony reveals, the Vail fence, starting at a staked corner and running to a staked corner, was erected as a boundary-line fence in 1937 or 1938 and the then adjoining landowners thereafter recognized and acknowledged it as such and in good faith occupied their respective tracts accordingly. The evidence likewise reveals, as the trial court found, that when the defendants purchased the Vail tract in 1945 and replaced the Vail fence in 1946 they intended their newly constructed fence as a boundary-line fence and treated it as such, along with the Pentecosts and the plaintiffs, until the 1963 survey. That the defendants intended, accepted, and acted upon their 1946 fence as a boundary-line fence, rather than simply a barrier fence, is logically deducible from the following circumstances: (a) The fence commenced and ended at the same general corner markers as the Vail fence; (b) it was erected concurrently with the construction of defendants' easterly boundary-line fence; (c) the Pentecosts and the plaintiffs by their acts of dominion up to the fence line patently acknowledged, recognized, and accepted the fence as the true division line between the respective tracts; and (d) the defendants, in turn, occupied their property up to the fence line, passively observed their neighbors' acts of dominion in relation to the now disputed strip, and made no overt claim to any property lying westerly of the fence line until an exchange of words gave rise to a dispute and the 1963 survey. Under these circumstances the trial court did not err in concluding that the boundary between the respective properties was established by mutual recognition and acquiescence.

The judgment is affirmed.

FINLEY, C. J., HILL, DONWORTH, WEAVER, ROSELLINI, HUNTER, and HALE, JJ., and DENNEY, J. Pro Tem., concur.