FILED
COURT OF APPEALS
DIVISION II

2014 NOV 25 AM 11: 23

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARK L. BUBENIK and MARGARET M. BUBENIK, husband and wife, | No. 44689-8-II |
| Appellants, | UNPUBLISHED OPINION |
| v. | |
| THOMAS J. MAUSS and KAROL K. MAUSS, | |
| Respondents. | |

BJORGEN, J. — Mark and Margaret Bubenik challenge the trial court's judgment and related findings of fact and conclusions of law denying their adverse possession and mutual recognition and acquiescence claims to a parcel of land disputed by them and their neighbors, Thomas and Karol Mauss. The Bubeniks also appeal the trial court's decision to fix the boundary between the two parcels, claiming that the trial court erred by granting the Mausses relief that they did not seek. We hold that substantial evidence supports the trial court's findings of fact, and that those findings support the court's conclusions of law on adverse possession and mutual recognition and acquiescence. We also hold that the Bubeniks waived any challenge to the trial court's resolution of the disputed boundary. We affirm.

FACTS[1]

In 1979, the Bubeniks bought land on Henderson Bay in Gig Harbor from William and Florence Bell. Although the Bubeniks did not commission a survey of the parcel when they bought it, Mark walked the land with William. William showed Mark a nail and metal spike along the bulkhead marking the property's boundaries with the adjacent parcels, the James Niquette property to the northeast, and what is now the Mauss property to the southwest. The distance between these markers measured 88 feet, a distance corresponding exactly to the legal description of the property's ocean frontage.[2] At the property's southern end, William also identified an upland property marker, an orange ribbon tied to the branches of a camellia bush on the upland side of the houses on what are now the Bubenik and Mauss properties. William claimed that a line drawn through the southern metal spike and the ribbon in the camellia bush formed the property boundary between the two parcels.

The Mausses bought their parcel in 1981. Like the Bubeniks, they did not survey their property when they bought it. The legal description of the Mauss parcel states that its border with Henderson Bay extends 87 feet.[3]

---

[1] We use the first names of the Bubeniks, Mausses, and Bells for clarity. We intend no disrespect.

[2] The legal description of the Bubenik parcel uses the "meander corner" as its origin. Clerk's Papers (CP) at 229. The meander corner marks the junction between the upland properties and the tidelands on the bay. *See* BLACK'S LAW DICTIONARY 1069 (9th ed. 2009) (definition of "meander line"). The dispute at issue in this appeal arises because the meander corner no longer exists and the parties differ on how to account for that reality.

[3] The legal description of the Mauss parcel also uses the no longer existing meander corner as its origin point.

2

The border between the Bubenik and Mauss properties crosses several physical features. Nearest the bay lies what the parties call the "shared lawn." Verbatim Report of Proceedings (VRP) (Jan. 10, 2013) at 46. This lawn extends well into both the Bubenik and Mauss properties. Over the years both parties have mowed this lawn, although they now share the cost of a lawn service. The Mausses installed a lawn sprinkler system that extends across what the Bubeniks believed to be the legal boundary between the properties. Near the bay side of the shared lawn is a maple tree. The Bubeniks have historically tended the tree and some plantings they made at its base, although Karol Mauss occasionally weeded underneath the tree.

Upland from the shared lawn is a garden area. The garden contains numerous flowers and flower bushes maintained by the Bubeniks, many of which the Bubeniks planted. The Mausses, their son, and their employees also garden in the area.

Further upland from the garden is a gravel area. The Bubeniks claimed at trial that they weeded the gravel on their side of what they believed to be the boundary line two or three times a year. The Mausses hired a company to spray the gravel on their side of the ostensible boundary with herbicide once a month; Mark testified that this company only sprayed across the boundary to his side accidently.

In 1995, the original log bulkhead shared by the Niquette, Bubenik, and Mauss properties began to rot. The three families agreed to replace the bulkhead with a new concrete one constructed in the same place.

Niquette, Mark, and Thomas walked the bulkhead and measured their ocean frontage using their property's legal descriptions and the northeastern beginning of the bulkhead as a starting point. According to Mark, the legal description of the Niquette's ocean frontage,

3

approximately 101 feet, corresponded to the distance between the beginning of the bulkhead and the metal spike that William had claimed marked Niquette's property boundary with the Bubeniks' land. According to Mark, the legal description of his 88 feet of ocean frontage also corresponded to the distance between the two markers that William had shown him when Mark bought the property. Mark also claimed that the men measured the length of the bulkhead between the southwesterly metal spike and the bulkhead's southwestern end and that this distance, 87 feet, corresponded to the legal description of the Mauss parcel's oceanfront property.

For his testimony, Thomas swore that he did not remember the men taking any measurements during the conversations about replacing the bulkhead, did not see the markers that Mark claimed marked the property boundary during the discussions, and did not believe that he was fixing the legal definition of his property.

The Bubeniks and the Mausses arranged to have a contractor build stairs into the new concrete bulkhead. The parties agreed to share the cost of the stairs equally. Mark stated that the parties agreed to center the stairs on the property line he claims so that the southern metal stake marked the midpoint of the new stairs. Thomas claimed that the parties located the stairs based on his ease of getting his boat in and out of the water rather than based on the property boundary.

In 2009, the Mausses began building a deck on the southwestern side of their property. The owner of the neighboring property expressed concern that the deck encroached on his land. At that point, Thomas commissioned a survey to determine his property's boundaries. The survey, which Thomas recorded with the county, indicated that the Mauss property actually

encompassed the entirety of the bulkhead stairs and 17 feet of what the Bubeniks believed to be their oceanfront property boundary.

The Bubeniks filed suit, seeking to obtain title to the portion of the Mauss property marked by what they considered the historical property boundary, the line defined by the metal stake at the center of the bulkhead staircase and the ribbon in the upland camellia bush. The Bubeniks asserted that they had adversely possessed the land at issue and asked the trial court to quiet title to the land in them. Alternatively, they claimed that the Mausses had adjusted the boundary through mutual recognition and acquiescence. The Bubeniks also prayed for declaratory relief, asking the trial court to "delineat[e] the property line between the parties' properties to be created by [a survey commissioned by the Bubeniks] or by the court." Clerk's Papers (CP) at 6.

The trial court heard the matter sitting without a jury. The Bubeniks and the Mausses testified about their use and maintenance of the disputed areas and their knowledge, or lack of knowledge, about boundary markers between their properties. Mark, Thomas, and Niquette testified to their discussions concerning the bulkhead replacement and the accompanying measurements.

Both sides offered into evidence the surveys they had commissioned to demarcate the boundaries of their properties. When the Bubeniks asked their surveyor about the accuracy of the survey that the Mausses recorded to establish his property boundary, he testified that "I won't say that theirs was inaccurate," given that any surveyor would need to estimate to the best of his or her ability where the no longer existing meander corner was. Verbatim Report of Proceedings (VRP) (Jan. 10, 2013) at 96.

5

During closing argument, the trial court asked the Mausses, "On your interpretation, the ultimate ruling was that the survey done by [land surveyors] AHBL, does correctly establish the boundary line between the parties. Is that what you'd be asking the court to do?"[4] VRP (Jan. 16, 2013) at 464. The Mausses responded, "Yes. The testimony was that AHBL is the only recorded survey." VRP (Jan. 16, 2013) at 464. The Bubeniks responded that the Mausses had failed to show that the line drawn by the AHBL survey marked "the appropriate line." VRP (Jan. 16, 2013) at 469.

The trial court entered findings of fact and conclusions of law denying the Bubeniks' claims for relief on both the adverse possession and mutual recognition and acquiescence claims and dismissing those claims with prejudice. The trial court found that the Bubeniks had failed to satisfy any elements of either claim. The trial court also concluded that the Mausses' survey marked the correct property boundary. Based on the Bubeniks' payment for half of the steps built into the bulkhead, the trial court found that the Mausses impliedly granted the Bubeniks and their heirs and assigns a "non-exclusive and perpetual pedestrian easement" to use the stairs.[5] CP at 199. The trial court entered a final judgment in accordance with its findings and conclusions, and the Bubeniks appealed.

## ANALYSIS

The Bubeniks claim that the trial court erred in denying and dismissing with prejudice their adverse possession and mutual recognition and acquiescence claims and by resolving the

---

[4] The AHBL survey was commissioned by the Mausses and recorded with the county.

[5] Both parties had prayed in their respective pleadings for "further relief as the court may deem just and equitable." CP at 6; see CP at 22.

property boundary along the lines of the Mausses' survey. Because the trial court's findings are supported by substantial evidence and in turn support its conclusions that the Bubeniks did not exclusively possess the disputed property, we disagree.

The Bubeniks largely base their appeal on the evidence they introduced in support of their claims. However, where the parties try a cause "to the court sitting without a jury, the findings of fact made by the trial court cannot be disturbed . . . if there be substantial evidence to support such findings," even if we could have or would have found differently if we had acted as the trier of fact. *Lamm v. McTighe*, 72 Wn.2d 587, 589, 434 P.2d 565 (1967). To determine if substantial evidence supports the trial court's findings, we look for "evidence sufficient to persuade a rational, fair-minded person" of the truth of the findings in the record and "review all reasonable inferences in the light most favorable to the prevailing party." *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 56, 63-64, 277 P.3d 18, *review denied*, 175 Wn.2d 1015 (2012); *Jensen v. Lake Jane Estates*, 165 Wn. App. 100, 104, 267 P.3d 435 (2011). If the trial court's findings of fact have substantial supporting evidence, we review de novo the trial court's conclusions of law to determine if its findings support those conclusions. *Newport Yacht Basin Ass'n*, 168 Wn. App. at 63, 64.

## I. ADVERSE POSSESSION

The Bubeniks first contend that the trial court erred in concluding that they had not satisfied any of the elements of adverse possession for the disputed parcel. We hold that the Bubeniks failed to carry their burden of proving at least one of the elements, exclusive possession, and affirm the trial court.

The doctrine of adverse possession allows a claimant to obtain legal title to real property through possession of the property. *Gorman v. City of Woodinville*, 175 Wn.2d 68, 71, 283 P.3d 1082 (2012). The claimant must show "possession that is (1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile." *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 757, 774 P.2d 6 (1989). Because the law presumes that the title holder possesses the property, a claimant asserting adverse possession of a parcel bears the burden of proving the concurrent existence of each of these elements over the statutory period by a preponderance of the evidence. *ITT Rayonier*, 112 Wn.2d at 757. In these circumstances, that period is 10 years. *See* 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 8.19, at 516 (2d ed. 1995). The exclusive possession element of adverse possession does not require the claimant to prove his or her possession was "*absolutely* exclusive." *Lilly v. Lynch*, 88 Wn. App. 306, 313, 945 P.2d 72 (1997) (emphasis in original). "An 'occasional, transitory use by the true owner'" permitted by the claimant as a "'neighborly accommodation'" does not nullify a claimant's showing of exclusive possession. *Lilly*, 88 Wn. App. at 313 (quoting 17 STOEBUCK, *supra*, § 8.19, at 516). However, a title owner's use of disputed property in a manner "indicat[ing] ownership" is incompatible with the claimant's attempt to show exclusive possession and will defeat an adverse possession claim. *Bryant v. Palmer Coking Coal Co.*, 86 Wn. App. 204, 217, 936 P.2d 1163 (1997). This reflects one commentator's assessment that

> [p]robably the most meaningful application of the requirement of exclusive possession is that the adverse possessor cannot share occupation with the true owner. This rests upon the basis that in law that possession is exclusive by its nature, and the owner, if on the land, can alone have it.

WILLIAM B. STOEBUCK, THE LAW OF ADVERSE POSSESSION IN WASHINGTON, 35 WASH. L. REV., at 53, 72 (1960).

The trial court found that the Bubeniks and the Mausses shared maintenance of the lower lawn, that the Mausses installed the lower lawn sprinkler system that they alone control that extends across the boundary the Bubeniks claim, and that the Mausses or their employees performed maintenance near the maple tree and in the garden area on the Bubenik side of the Bubeniks' claimed boundary. Testimony at trial supported each of these findings. *E.g.* VRP (Jan. 10, 2013) at 46 (discussing shared lawn maintenance); VRP (Jan. 14, 2013) at 229-30 (same); VRP (Jan. 14, 2013) at 247, 267-69, 279 (discussing the Mausses' installation of the new sprinkler system); VRP (Jan. 15, 2013) at 366-68 (same); (Jan. 10, 2013) at 58-60 (discussing how the Mausses' gardeners worked on the Bubenik side of the boundary the Bubeniks are attempting to claim); VRP (Jan. 14, 2013) at 246 (discussing the Mausses' son's garden maintenance); VRP (Jan. 16, 2013) at 420-24 (discussing Karol's weeding on the Bubenik side of the boundary the Bubeniks are claiming). We hold that substantial evidence supports the findings.

The trial court's findings concerning the Mausses' use of the disputed area support its conclusion that the Bubeniks did not have exclusive possession of that area. *ITT Rayonier,* 112 Wn.2d at 758-60 (shared use of disputed land defeated a claim of exclusive possession); *Scott v. Slater,* 42 Wn.2d 366, 369, 255 P.2d 377 (1953), *overruled on other grounds by Chaplin v. Sanders,* 100 Wn.2d 853, 676 P.2d 431 (1984) (shared cultivation and maintenance of disputed land defeated claim of exclusive possession); *Thompson v. Schlittenhart,* 47 Wn. App. 209, 212,

734 P.2d 48 (1987) (mowing the shared lawn by both parties to a dispute defeated a claim of exclusive possession).

The Bubeniks nevertheless argue that the trial court erred in concluding that they lacked exclusive possession because it did so based solely on the collective maintenance for the shared lawn.[6] The Bubeniks assert that this agreement, which concerned a tiny portion of the land at issue, does not contradict that they exclusively maintained the larger portion of the disputed land. This argument, however, ignores the trial court findings, supported by evidence, that the Mausses or their employees also used the upland portions of the Mauss parcel claimed by the Bubeniks. This use, together with the shared use and maintenance of the lawn, defeats any claim of exclusive possession of the disputed parcel by the Bubeniks. *Scott*, 42 Wn.2d at 369; *see Thompson*, 47 Wn. App. at 212; *Bryant*, 86 Wn. App. at 217.

Because the trial court's findings are supported by substantial evidence, and because those findings support the trial court's conclusions that the Bubeniks did not exclusively possess the disputed property, we affirm the trial court's denial of the Bubeniks' adverse possession claim.[7]

---

[6] The Bubeniks raise a number of legal arguments as to why they exclusively possessed the disputed parcel in their reply brief. While responsive to the Mausses' briefing, the Mausses' briefing pointed out the Bubeniks' failure to carry their burden of showing error. The Bubeniks' reply briefing therefore raises arguments properly part of an opening brief, and we consider these arguments waived by the failure to raise them there. *Ives v. Ramsden*, 142 Wn. App. 369, 396, 174 P.3d 1231 (2008); RAP 10.3(c).

[7] The Bubeniks challenge a number of the trial court's findings related to their adverse possession claim. Because we affirm the trial court based on the Bubeniks' failure to establish exclusive possession, our disposition of this case addresses or makes irrelevant the Bubeniks' challenge to findings 2, 25, 36, 37, 38, 42, 43, 44, 45, and 46.

## II. MUTUAL ACQUIESCENCE

Alternatively, the Bubeniks argue that the trial court erred in denying their claim that the Mausses had mutually recognized or acquiesced to the boundary they claimed. Again, we affirm.

> Under the doctrine of mutual recognition and acquiescence, if
>
> adjoining property owners occupy their respective holdings to a certain line for a long period of time, they are precluded from claiming that the line is not the true one, the theory being that the recognition and acquiescence affords a conclusive presumption that the used line is the true boundary.

*Lamm*, 72 Wn.2d at 592. To show title to land by mutual recognition and acquiescence, a party must show by clear, cogent, and convincing evidence

> "(1) that the boundary line between two properties was certain, well defined, and in some fashion physically designated upon the ground, *e.g.*, by monuments, roadways, fence lines, etc.; (2) that the adjoining landowners, in the absence of an express boundary line agreement, manifested in good faith a mutual recognition of the designated boundary line as the true line; and (3) that mutual recognition of the boundary line continued for the period of time necessary to establish adverse possession (10 years)."

*Merriman v. Cokeley*, 168 Wn.2d 627, 630-31, 230 P.3d 162 (2010) (quoting *Lamm*, 72 Wn.2d at 593).

The trial court found that the Mausses did not see, and otherwise lacked knowledge of, the steel stake in the ground near the bulkhead or the orange ribbon in the camellia bush that the Bubeniks claim marked their claimed property boundary. Substantial evidence supports this finding, since both the Mausses testified to this effect.

Further, the trial court found the Mausses' testimony credible, and that finding is not susceptible to attack on appeal. *Faust v. Albertson*, 167 Wn.2d 531, 538, 222 P.3d 1208 (2009). The trial court also found that "[t]he landscape and topography of the two properties is such that

11

the lawn and garden areas between the homes flow together without any designation of where one property ends and the other begins." CP at 195. Substantial evidence also supports this finding. The claimed property boundary crosses garden and lawn areas undivided by any type of physical barrier or sign of division, natural or artificial. The trial court's findings support its conclusion that the Bubeniks failed to show the claimed boundary was sufficiently marked and certain. *See Merriman*, 168 Wn.2d at 631-32. Their mutual recognition and acquiescence claim fails on the first element of such a claim.

The trial court also found that the Mausses never treated the Bubeniks' proposed boundary as the true one. Substantial evidence supports these findings. The Mausses both testified that they never agreed to the boundary proposed by the Bubeniks, even when fixing the location of the stairwell in the new bulkhead. Again, the trial court accepted this testimony as credible and we defer to such a finding. The trial court also found, as discussed above, that the Mausses engaged in lawn maintenance and gardening activities across what the Bubeniks now claim as the property boundary. Based on these findings the trial court could permissibly conclude that the Mausses had not shaped their acts in accordance with the boundary the Bubeniks claim. The trial court's findings support its conclusion that the Mausses never

expressly agreed or impliedly acquiesced to the Bubeniks' proposed boundary. The Bubeniks' mutual acquiescence claim also fails on the second element.[8,9]

## III. QUIET TITLE

Finally, the Bubeniks contend that the trial court erred by fixing the property boundary between their parcel and the Mausses' and quieting title to the Mausses up to that boundary. The Bubeniks argue that the Mausses sought no affirmative relief from the trial court, so the trial court's resolution of the discrepancies between the surveys offered by the parties deprived them of property without notice.

We disagree with the Bubeniks' argument. Their complaint requested that the trial court "delineat[e] the property line" between their property and the Mauss' property, CP at 6, giving them notice that the trial court might do so. Because their complaint authorized the trial court to fix the property boundary on a line "created . . . by the court," CP at 6, they have waived any right to complain about the court having done so. *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 106, 297 P.3d 677 (2013) (quoting *Bowman v. Webster*, 44 Wn.2d 667, 669, 269 P.2d 960 (1954)) (defining waiver).[10]

---

[8] The Bubeniks also challenge a number of the trial court's findings related to their mutual recognition and acquiescence claim. As discussed above, we find substantial supporting evidence for the relevant portions of findings 15, 19, 27, 29, 30, 31, 39, 40, and 42. We must reject the Bubeniks' challenge to findings 20 and 28 as unreviewable, since they concern the trial court's credibility determinations. We find substantial evidence to support the remainder of the challenged findings related to the mutual recognition and acquiescence claim.

[9] The Bubeniks ask us to review the trial court's credibility determination in finding 28 as inconsistent with finding 51. The Bubeniks' challenge is based on arguments about their subjective intent. The trial court's findings concerned the Mausses' subjective intent. There is no inconsistency.

[10] Accordingly, we decline to address the Bubeniks' challenge to findings 47 and 49.

### III. ATTORNEY FEES

The Bubeniks do not request attorney fees. The Mausses request attorney fees under RCW 7.28.083(3), RAP 18.1, and RAP 18.9. We deny their request.

RCW 7.28.083(3) allows for an award of attorney fees to "[t]he prevailing party in an action asserting title to real property by adverse possession" where the award "is equitable and just." However, RCW 7.28.083(3) only applies to actions filed after July 1, 2012. LAWS OF 2011, ch. 255, § 2. While the Mausses have prevailed, the Bubeniks filed their suit several months before the effective date of RCW 7.28.083(3). We therefore deny the Mausses' request for attorney fees under RCW 7.28.083(3).

RAP 18.9 authorizes an award of attorney fees where a litigant pursues a frivolous claim on appeal. Such an award is appropriate where we "[are] convinced that the appeal presents no debatable issues upon which reasonable minds might differ, and that the appeal is so devoid of merit that there is no possibility of reversal." *Advocates for Responsible Dev. v. W. Wash. Growth Mgmt. Hearings Bd.*, 170 Wn.2d 577, 580, 245 P.3d 764 (2010). We hold that the Bubeniks' appeal was not so devoid of merit that there was no possibility of reversal. There are debatable issues about several of the elements of their adverse possession claim. Consequently, we decline to award the Mausses attorney fees under RAP 18.1 and 18.9.

### CONCLUSION

We affirm the trial court's denial of the Bubeniks' adverse possession and mutual recognition and acquiescence claims, because we find substantial supporting evidence for the findings of fact properly used to conclude the Bubeniks failed to satisfy necessary elements of their claims. We decline, based on waiver, to reach the merits of the Bubeniks' challenge to the

No. 44689-8-II

trial court's decision to quiet title in the Mausses, and we deny the Mausses' request for attorney fees.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, C.J.

MELNICK, J.