# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PERRY SMITH and ERIN SMITH, husband and wife, | No. 51476-1-II |
| Appellants, | |
| v. | |
| PAUL STOUT and TRISH SMITH, | UNPUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — Perry and Erin Smith appeal the superior court's orders granting summary judgment and awarding attorney fees and costs related to their suit to quiet title and claim for adverse possession of a portion of property abutting the property owned by their neighbors, Paul Stout and Trisha Smith (the Stouts[1]). The Smiths argue, in part, that the superior court erred by considering the Stouts' summary judgment motion based on the unpleaded affirmative defense that a parol agreement between the Stouts' and the Smiths' predecessors in interest established the property boundary line because the Stouts failed to properly plead the affirmative defense as

---

[1] Because the parties both refer to Paul and Trisha as "the Stouts," and to avoid confusion because Trisha and the Appellants share a last name, this court refers to Paul Stout and Trisha Smith as "the Stouts." We intend no disrespect.

required under CR 8(c). We agree and reverse the superior court's orders granting summary judgment and awarding the Stouts attorney fees and costs.[2]

FACTS

I. THE PROPERTIES

Douglas Rossi and Kim Horvath (Rossi/Horvath) owned property in Gig Harbor. In the 1990s, Jeff and Lisa Daily purchased the lot next to them and commissioned a formal survey of the property line. The south 30 feet of the Daily's lot was subject to a 30-foot buffer area. The Daily survey revealed that part of Rossi/Horvath's driveway was on the Dailys' property. In light of the survey, Rossi/Horvath relocated their driveway so that it was entirely located on their property, and they built a rock retaining wall to run along the edge of the driveway. Rossi/Horvath maintained fruit trees and raised garden beds along the top of the rock wall in an area which they believed was their property. Adjacent to Rossi/Horvath's driveway was a graveled parking area, which Rossi/Horvath understood to be part of the Dailys' property despite Rossi/Horvath's use of the parking area. Rossi/Horvath also maintained an area they understood to be the Dailys' property by cutting back blackberry bushes and mowing the lawn.

The Stouts purchased the Daily property in 2013. Shortly after the Stouts moved in, Rossi showed Stout where he thought the property line between the lots was located. During the time that the Stouts and Rossi/Horvath were neighbors, the families shared a friendly relationship.

---

[2] The Smiths also argue that genuine issues of material fact exist such that summary judgment was improper and that the superior court erred by awarding the Stouts attorney fees and costs. Because we otherwise reverse and remand, we do not address these arguments other than to vacate the superior court's order awarding the Stouts attorney fees and costs.

2

In April 2016, Rossi/Horvath listed their property for sale. At the same time, the Stouts were contemplating building a garage on their property and decided to obtain a formal survey of the property line to ensure they did not build in the 30-foot buffer area on the south side of the lot. After the survey line was marked with stakes with pink flags, Rossi and the Stouts walked the staked line together. Rossi was unsurprised by the location of the survey line, as it was near where he remembered the Daily survey placing the line. According to Rossi, Rossi and the Stouts agreed the survey "was a good thing because there would be no uncertainty or confusion for the buyers . . . as to where the boundary line was." Clerk's Papers (CP) at 65.

In May 2016, the Smiths offered to purchase Rossi/Horvath's property. After the Stouts surveyed the property line, Rossi/Horvath, the Smiths, and their realtors walked the staked line. According to Rossi, Smith asked if Rossi/Horvath had any problems with the Stouts and after he heard they did not, expressed that he was satisfied with the property line and comfortable moving forward with the purchase. According to Smith, Rossi told him that the survey stakes were there "merely because the Stouts planned to build a garage and a survey was required as part of that process and not because the Stouts intended to do any work in that area, as they could not given [the] buffer restrictions." CP at 71. According to Smith, no one "ever told us that any portion of the landscaping that [Rossi/Horvath] maintained or the parking area was on the Stouts' property." CP at 72. The Smiths proceeded with closing on the property.

Between July and October 2016, the Stouts began construction on their property including clearing trees and grading a new road. In December 2016, the Smiths received a letter from the Stouts' attorney purporting to revoke the Stouts' permission for the Smiths to use the Stouts' property. Shortly thereafter, the Stouts began constructing a fence through the area the Smiths and

Rossi/Horvath had maintained and placed logs from cut trees in the parking area that the Smiths and Rossi/Horvath had used.

## II. LAWSUIT

On March 9, 2017, the Smiths filed suit against the Stouts for quiet title and ejectment, claiming adverse possession of the disputed area based on the Smiths' and Rossi/Horvath's use of the property. The Stouts answered the complaint with general denials as well as the affirmative defenses of failure to state a cause upon which relief can be granted and failure to name necessary parties to the action. The Stouts also "reserve[d] the right to name additional affirmative defenses at the completion of discovery."

In December 2017, the Stouts filed a motion for summary judgment dismissal of the Smiths' lawsuit. The Stouts argued that regardless of any previous adverse possession, the Stouts and Rossi/Horvath had established the property line by parol agreement and that the Smiths took possession of the property with reference to that line. Specifically, the Stouts argued that both they and Rossi/Horvath were uncertain as to the property line when the Stouts obtained a survey of the property. The Stouts claimed that after the survey line was marked with stakes with pink flags, Rossi and Stout agreed the survey line would be the property line between their parcels. The Stouts claimed that the Smiths were aware of the survey line and purchased Rossi/Horvath's property with reference to the staked property line.

The Smiths opposed the Stouts' motion for summary judgment arguing that the Stouts were barred from raising the affirmative defense of parol agreement for the first time in a motion for summary judgment and that genuine issues of material fact precluded summary judgment.

4

On January 19, 2018, the superior court granted the Stouts' motion for summary judgment and dismissed the Smiths' lawsuit. The superior court subsequently entered a judgment awarding the Stouts $25,218.19 in fees and costs under RCW 7.28.083.

The Smiths appeal.

## ANALYSIS

The Smiths argue that the superior court erred by considering the Stouts' summary judgment motion based on the parol agreement affirmative defense because the Stouts did not properly plead the affirmative defense as required by CR 8(c). The Stouts argue in response that parol agreement is not an affirmative defense and, even if it is, the failure to plead it was harmless, and therefore, the court did not err by considering their motion. We agree with the Smiths that parol agreement is an affirmative defense and that the Stouts failed to plead it as required under CR 8(c), and thus, the superior court erred by considering the Stouts' summary judgment motion based on this defense.

Washington is a notice pleading state and merely requires a simple, concise statement of the claim and the relief sought. CR 8(e). CR 8(c) requires a party to plead an affirmative defense in the party's answer or it is waived. A party must give the opposing party fair notice of the affirmative defense in its pleadings. *Gunn v. Riely*, 185 Wn. App. 517, 528, 344 P.3d 1225 (2015).

But a party does not necessarily waive its affirmative defense merely because it fails to plead it. If the affirmative defense is tried by the express or implied consent of the parties, the defense is not waived. *Gunn*, 185 Wn. App. at 529. Where the party fulfills the policy goal animating the rule—to avoid surprise—we will permit the affirmative defense. *Henderson v. Tyrrell*, 80 Wn. App. 592, 624, 910 P.2d 522 (1996). Thus, a party's failure to affirmatively plead

a defense is harmless where the failure to plead does not affect the substantial rights of the parties. *Henderson*, 80 Wn. App. at 624.

The Stouts contend that parol agreement is not an affirmative defense to adverse possession and thus, they were not required to plead it in their answer. We disagree. *Black's Law Dictionary* defines "affirmative defense" as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true." *Black's Law Dictionary* 528 (11th ed. 2019). The Stouts' parol agreement argument fits this definition. The Stouts' motion did not contest the Smiths' adverse possession argument; rather, it introduced a different boundary location doctrine—parol agreement.[3] The Stouts claimed that even if adverse possession had changed the location of the property line, that change was irrelevant once Rossi and the Stouts later established their parol agreement. Accordingly, we hold that parol agreement is an affirmative defense subject to the notice pleading requirements of CR 8(c).

Further, the Smiths did not expressly or impliedly consent to the litigation of the affirmative defense; the Smiths' response to the Stouts' motion for summary judgment clearly objected to the Stouts' reliance on the unpleaded affirmative defense. Thus, we must determine whether the Stouts' failure to plead their affirmative defense was harmless. We hold that it was not.

The Stouts' failure was not harmless because the Stouts did not put the Smiths on notice that they would be asserting parol agreement as an affirmative defense until the Stouts filed their motion for summary judgment after the Smiths had completed their depositions of Rossi and Horvath. Thus, the Smiths did not tailor their depositions of Rossi and Horvath, or any other

---

[3] Adverse possession and parol agreement are separate and distinct methods of resolving boundary line disputes. *See Lamm v. McTighe*, 72 Wn.2d 587, 591, 434 P.2d 565 (1967).

potential witnesses, to address the defense of parol agreement. The Stouts suggest that the Smiths were sufficiently put on notice of the parol agreement defense when Horvath mentioned conversations relating to the staked line. However, Horvath mentioning prior conversations about the staked line is insufficient to avoid the "unfair surprise" that CR 8(c) is aimed at.[4]

The Stouts also argue that the Smiths must not have been prejudiced because they did not request a continuance to conduct further discovery after the Stouts filed their motion raising parol agreement for the first time. We reject the Stouts' argument because the Stouts provide no authority for the premise that a party must move for a continuance in order to prove it was prejudiced by deficient pleadings. Because the Stouts' failure to plead the affirmative defense affected the substantial rights of the Smiths, the Stouts' failure was not harmless.

In conclusion, we hold that the Stouts failed to plead their parol agreement affirmative defense as required by CR 8(c) and that their failure was not harmless. Accordingly, the superior court should not have considered the Stout's motion for summary judgment based on the parol agreement affirmative defense, and we reverse the superior court's order granting summary judgment.[5] Because we reverse the order granting summary judgment the Stouts are not the prevailing party below, and thus, are not entitled to an award of attorney fees and costs.[6]

---

[4] The Stouts also argue that the Smiths were sufficiently put on notice of the parol agreement defense through a settlement letter that the Stouts sent the Smiths. We hold that this settlement letter containing a variety of potential arguments was insufficient to satisfy Washington's notice pleading rules.

[5] We note that nothing in this opinion should be construed to foreclose the Stouts' ability to seek leave to amend their answer under CR 15 or foreclose additional discovery related to an amended answer.

[6] RCW 7.28.083

No. 51476-1-II

Accordingly, we reverse the order awarding fees and costs. We also decline to award the Stouts attorney fees and costs on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

MELNICK, P.J.

GLASGOW, J.

8