230 P.3d 162 (2010)
Scott MERRIMAN and Kim Merriman, husband and wife, Respondents,
v.
Paul COKELEY and Dianne Cokeley, husband and wife, Petitioners.
No. 83700-7.
Supreme Court of Washington, En Banc.
Considered April 1, 2010.
Decided April 8, 2010.
*163 Robert Kinney Valz, Jr., Valz Houser Kogut & Barnes, P.S., Olympia, WA, for Petitioners.
Thomas F. Miller, Attorney at Law, Tumwater, WA, Jay Allan Goldstein, Carmen R. Rowe Hoogkamer, Jay A. Goldstein Law Office, P.L.L.C., Olympia, WA, for Respondents.
PER CURIAM.
¶ 1 Paul and Dianne Cokeley seek review of a Court of Appeals decision holding that Scott and Kim Merriman sufficiently proved a clear and well-defined boundary between the parties' properties sufficient to establish the boundary by mutual recognition and acquiescence. Because we agree with the trial court that the Merrimans failed to prove a clear and well-defined boundary by clear, cogent, and convincing evidence, we grant review, reverse the Court of Appeals, and reinstate the trial court's judgment quieting title in the Cokeleys.
¶ 2 The Merrimans live on a waterfront lot they purchased from Dan Kosenski in 1996. An adjacent and undeveloped waterfront lot was then owned by Rita Willits. In 1993 Rita's husband, Ward Willits, had a survey conducted to locate the boundary between Rita's lot and the lot then owned by Kosenski. The surveyors marked the boundary by placing a survey marker at the road at the front of the lot, another marker at the top of a bluff near the water's edge, and a third marker about midway between the other two markers. A few months later, Ward Willits installed wooden posts next to the two corner markers and placed a metal stake about halfway along what he thought was the property line. The purported boundary line remained undisturbed from 1993 to 2002. During that time, blackberries, weeds, and ivy grew in the area. In 2002 Ward Willits erected a two-strand, barbed wire fence with steel posts along the survey line.
¶ 3 After the Merrimans bought Kosenski's lot in 1996, they wished to also buy Rita Willits's lot, but the parties could not agree on a price. The Cokeleys bought Rita's lot instead in 2004. Over the Merrimans' objections, the Cokeleys obtained permits to build a residence on their lot. The Merrimans erected wooden fence panels and planted shrubs along part of the survey line to enhance privacy around their residence.
¶ 4 In 2006 the Cokeleys hired surveyors to establish the boundary between their lot and the Merrimans' lot. That survey revealed that the previous surveyors had proceeded *164 at an incorrect angle from the road when they plotted the boundary. As a consequence, the marker near the center of the property line was off by 11 inches, and the marker on the bluff was off by 20 inches. The new survey thus showed that a narrow triangular piece of land previously thought to be part of the Merrimans' lot was actually part of the Cokeleys' lot.
¶ 5 The Merrimans sued the Cokeleys to quiet title to the disputed parcel, asserting adverse possession, estoppel in pais, and mutual recognition and acquiescence in the boundary marked by the original surveyors. The Cokeleys counterclaimed to quiet title in accordance with their survey. After a bench trial, the court determined that the Merrimans failed to prove adverse possession or mutual acquiescence by clear and convincing evidence. It therefore quieted title in the Cokeleys. The Court of Appeals reversed in a divided decision, holding that the Merrimans adequately established the boundary by mutual recognition and acquiescence. Merriman v. Cokeley, 152 Wash.App. 115, 215 P.3d 241 (2009).
¶ 6 A party claiming title to land by mutual recognition and acquiescence must prove (1) that the boundary line between two properties was "certain, well defined, and in some fashion physically designated upon the ground, e.g., by monuments, roadways, fence lines, etc."; (2) that the adjoining landowners, in the absence of an express boundary line agreement, manifested in good faith a mutual recognition of the designated boundary line as the true line; and (3) that mutual recognition of the boundary line continued for the period of time necessary to establish adverse possession (10 years). Lamm v. McTighe, 72 Wash.2d 587, 593, 434 P.2d 565 (1967). These elements must be proved by clear, cogent, and convincing evidence. Lilly v. Lynch, 88 Wash.App. 306, 316-17, 945 P.2d 727 (1997). To meet this standard of proof, the evidence must show the ultimate facts to be highly probable. Douglas Nw., Inc. v. Bill O'Brien & Sons Constr., Inc., 64 Wash. App. 661, 678, 828 P.2d 565 (1992).
¶ 7 At issue is whether the boundary line claimed by the Merrimans was sufficiently certain and well-defined before Ward Willits erected the barbed wire fence in 2002.[1] An appellate court reviews a trial court's findings of fact for substantial evidence in support of the findings. In re Marriage of Schweitzer, 132 Wash.2d 318, 329, 937 P.2d 1062 (1997). Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise. Bering v. SHARE, 106 Wash.2d 212, 220, 721 P.2d 918 (1986). A reviewing court may not disturb findings of fact supported by substantial evidence even if there is conflicting evidence. In re Marriage of Lutz, 74 Wash.App. 356, 370, 873 P.2d 566 (1994). Unchallenged findings of fact are verities on appeal. Robel v. Roundup Corp., 148 Wash.2d 35, 42, 59 P.3d 611 (2002).
¶ 8 The trial court here found that from 1993 to 2002 the area along the lot line marked by the original survey stakes became overgrown with blackberry bushes, weeds, and ivy. The Merrimans did not dispute this finding on appeal, and it was supported by substantial evidence in any event. Despite this finding, the Court of Appeals majority held that the survey markers and adjacent posts were sufficient to establish a certain, well-defined, and physically designated boundary. But where the disputed area is overgrown, more than isolated markers are required to prove a clear and well-defined boundary. A fence, a pathway, or some other object or combination of objects clearly dividing the two parcels must exist. Lamm, 72 Wash.2d at 593, 434 P.2d 565. Illustratively, in a case in which there was no fence and no defining point of cultivation (apart from a row of pear trees along the purported boundary line), we held that no well-defined boundary was established. Scott v. Slater, 42 Wash.2d 366, 368-69, 255 P.2d 377 (1953), overruled on other grounds by Chaplin v. Sanders, 100 Wash.2d 853, 862 n. 2, 676 P.2d 431 (1984); see also Lamm, 72 Wash.2d at 592, 434 P.2d 565 (quoting Scott with approval). In another case, the Court of Appeals found insufficient a retaining wall constructed *165 of railway ties that extended a short distance into the beach area of the disputed waterfront property, since there were no other "monuments, roadways, or fence lines" along the disputed boundary. Green v. Hooper, 149 Wash.App. 627, 642, 205 P.3d 134, review denied, 166 Wash.2d 1034, 217 P.3d 782 (2009). The three widely spaced markers in this case, set in a thicket of blackberry bushes, ivy, and weeds, did not constitute a clear and well-defined boundary. Substantial evidence supported the trial court's findings to this effect.
¶ 9 Accordingly, we reverse the Court of Appeals and reinstate the trial court's judgment quieting title in the Cokeleys.
NOTES
[1] The barbed wire fence existed for only a small part of the 10-year adverse possession period, so the certainty of the boundary before that fence was installed is determinative.