IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Petition for Protection of, | ) | |
| JACKSON D. CONDREY, a minor. | ) | No. 33981-5-III |
| | ) | |
| DANA M. CONDREY, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| NEIL CONNOR FUCHS, | ) | |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — Neil Connor Fuchs, a Freeman High School student, appeals an

antiharassment order prohibiting him from coming within 20 feet of fellow Freeman

student Jackson Condrey. Mr. Fuchs argues that the trial court abused its discretion in

both granting the protection order and making the order last longer than a year. He also

contends that the court abused its discretion by denying his motion to reconsider and to

hear live testimony. We affirm.

## FACTS

The underlying facts are generally known to the parties. Briefly, Connor[1] Fuchs had a history of harassing and bullying Jackson Condrey while they both attended school in the Freeman School District. This harassment culminated in a June 2015 incident in gym class. Connor locked Jackson's arms behind his back and Jackson was injured when they fell to the floor. The incident was captured on a school surveillance video, which the trial court had the benefit of viewing. Based on the injuries, Jackson's mother called the police to report the incident and, after an investigation, sought a protection order for her son. Connor opposed the petition. The parties and parents submitted declarations in support of their side.

Ultimately, the trial court granted the petition and issued the order of protection extending until June 2018, the length of time the two boys were in high school together. The court did not force Connor to attend a different school. Instead, the court allowed him to attend Freeman High School, but ordered him not to speak with or come within 20 feet of Jackson Condrey.

## ANALYSIS

Well-settled principles of law govern this appeal. This court reviews the issuance of a harassment protection order for abuse of discretion. *See Trummel v. Mitchell*, 156

---

[1] Mr. Fuchs is known as Connor and we refer to him, as well as to Mr. Condrey, by their first names for convenience.

2

Wn.2d 653, 668-669, 131 P.3d 305 (2006); *In re Vulnerable Adult Pet. for Knight*, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014). A person subject to unlawful harassment may petition the superior court for an order of protection. RCW 10.14.040. Upon receipt of the petition, the court may issue a temporary antiharassment protection order until such time as a hearing can be scheduled, not to exceed 14 days. RCW 10.14.080(1), (2). If the court finds at the hearing that "unlawful harassment exists" by a preponderance of the evidence, the court shall issue a protection order prohibiting that harassment. RCW 10.14.080(3).

Discretion is abused when it is exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). The court's findings are reviewed for substantial evidence. *Knight*, 178 Wn. App. at 936. This standard continues to apply even if there is no formal fact finding hearing. *Id.* at 937 n.3. "Substantial evidence" exists if the evidence is sufficient to persuade a fair-minded rational person of the truth of the evidence. *In re Estate of Jones*, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Appellate courts do not find facts and cannot substitute their view of the facts in the record for those of the trial judge. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959). Accordingly, the presence of conflicting evidence does not prevent evidence from being "substantial." *E.g., Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

The determination of whether unlawful harassment exists warranting an order of protection is largely controlled by statute. The statute defines "unlawful harassment":

> "Unlawful harassment" means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner, or, when the course of conduct would cause a reasonable parent to fear for the well-being of their child.

RCW 10.14.020(2). The statute also defines what constitutes a "course of conduct":

> "Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. "Course of conduct" includes, in addition to any other form of communication, contact, or conduct, the sending of an electronic communication, but does not include constitutionally protected free speech. Constitutionally protected activity is not included within the meaning of "course of conduct."

RCW 10.14.020(1). Finally, the statute sets forth factors for the trial court to consider in determining whether the course of conduct serves any legitimate or lawful purpose:

> The court should consider whether:
> (1) Any current contact between the parties was initiated by the respondent only or was initiated by both parties;
> (2) The respondent has been given clear notice that all further contact with the petitioner is unwanted;
> (3) The respondent's course of conduct appears designed to alarm, annoy, or harass the petitioner;
> (4) The respondent is acting pursuant to any statutory authority, including but not limited to acts which are reasonably necessary to:
> (a) Protect property or liberty interests;
> (b) Enforce the law; or
> (c) Meet specific statutory duties or requirements;

4

(5) The respondent's course of conduct has the purpose or effect of unreasonably interfering with the petitioner's privacy or the purpose or effect of creating an intimidating, hostile, or offensive living environment for the petitioner;

(6) Contact by the respondent with the petitioner or the petitioner's family has been limited in any manner by any previous court order.

RCW 10.14.030.

A parent may petition for a protection order for her child. RCW 10.14.040(7). However, for a protection order to issue against a minor, the restrained minor either must have been adjudicated of an offense against the child protected or must have been investigated for such an offense. *Id.* In restraining a minor, the trial court must consider a number of factors: (1) "the severity of the alleged offense," (2) "any continuing physical danger or emotional distress to the alleged victim," and (3) "the expense, difficulty, and educational disruption that would be caused by a transfer of the alleged offender to another school." *Id.* If both minors attend the same school, the trial court may order the restrained to attend a different school at his or her parents' expense. *Id.*

This appeal can be broken into three parts: (1) the issuance of the order, (2) the length of the order, and (3) the motion to reconsider and hear live testimony. We address each part in turn.

*Issuance of the Order*

Mr. Fuchs essentially challenges the sufficiency of the evidence for an antiharassment order of protection. He focuses on four requirements: (1) whether his

5

conduct was knowing and willful, (2) whether there was a continuing course of conduct rather than a single incident, (3) whether the conduct served any legitimate or lawful purpose, and (4) whether there was a sufficient investigation for a protection order against a minor. Given the deferential nature of the standard of review, we look to the record for facts supporting the trial court's findings. *Knight*, 178 Wn. App. at 936-37. Because there are facts supporting each of the challenged factors, we affirm.

In arguing that the conduct was not knowing and willful, appellant improperly ignores the declarations from Jackson and his mother. Those declarations set forward ample evidence from which the trial court could conclude that Connor knew his conduct annoyed, harassed, or was detrimental to Jackson. Specifically, Jackson indicates that Connor repeatedly called him "'gay,' 'homo,' 'faggot,' and 'pussy.'" He also indicates that Connor pulled his chair out from under him, poured water on his head while using the restroom, spit on him, pushed him, and shoved him. Jackson's parents also indicate they reached out to Connor's parents years ago to stop the harassment. Connor's own affidavit indicates he knew he was supposed to stay away from Jackson. Those facts are sufficient to support the trial court's conclusion that the weight of the evidence supported issuing an antiharassment protection order.

The argument that there was no continuing course of conduct likewise fails. Jackson's declaration outlines a continuing course of conduct; he indicates he was harassed by Connor Fuchs for years, including both name calling and physical incidents.

6

His description satisfies the language of the statute: there was a "series of acts over a period of time . . . evidencing a continuity of purpose." RCW 10.14.020(1). The facts here support the trial court's conclusion.

Next, Connor challenges whether his conduct served a legitimate or lawful purpose, arguing that the statutory factors do not support the conclusion that the conduct served no legitimate or lawful purpose. However, Jackson's affidavit (which is consistent with reports made by his parents to the school) suggests classic bullying by Connor, including name-calling and physical actions. It is untenable to suggest classic bullying serves a legitimate and lawful purpose. We need address this argument no further.

Finally, Mr. Fuchs argues that the protection order was inappropriate here because there was an insufficient investigation. He reasons that the legislature did not want protection orders to issue for mere "schoolyard scuffles." He is correct that the legislature limited the application of a protection order against a minor to situations where the restrained has been adjudicated of an offense or *investigated* for an offense against the protected child. RCW 10.14.040(7). Here, however, Connor was investigated by police for an assault based on the June 2015 incident in the gym. Clerk's Papers at 15-19. The investigation satisfies this element of the statute. His further arguments that the investigation was somehow insufficient are not persuasive.

7

The record supports the trial court's conclusion, after consideration of the statutory factors, to enter the protection order.

*Length of Order*

Antiharassment orders are presumptively one year in length. RCW 10.14.080(4). The statute, however, allows a longer duration if the trial court finds that harassment is likely to continue after the year: "An order issued under this chapter shall be effective for not more than one year unless the court finds that the respondent is likely to resume unlawful harassment of the petitioner when the order expires." *Id.*

Mr. Fuchs argues that the protection order here was too long and that the trial court made no inquiry into Mr. Fuchs's likelihood for future harassment. He also argues that substantial evidence cannot support this finding because there was no evidence of harassment in the first place. The latter argument easily fails. As indicated above, ample evidence supports the trial court's finding of harassment.

Evidence supports the finding that Connor would resume harassing Jackson after a year. The situation between the two had been ongoing for some time. At one time Connor's parents directed Connor to stay away from Jackson. While this may have worked at first, their interactions and harassment eventually resumed. From these facts, it was reasonable for the trial court to conclude that Connor would likely resume harassment of Jackson, as he had before, if the order did not extend through the end of

8

high school. This was particularly the case given that the trial court had not removed Connor from Jackson's school, thus leaving the two in proximity for further harassment.

Finally, the trial court tailored its relief. Rather, than ordering Connor to attend a different high school, it only ordered Connor not to come within 20 feet of Jackson while at school. It thereby allowed them to remain at the same school and saved the parents the expense of financing education in a different district. We find no abuse of discretion in the length or nature of the protection order.

*Motion to Reconsider*

The court also reviews a trial court's decision on a motion for reconsideration for abuse of discretion. *Lilly v. Lynch*, 88 Wn. App. 306, 321, 945 P.2d 727 (1997). Here, Connor argues that the trial court erred in denying his motion to reconsider and have live testimony. Specifically, he says the trial court applied the wrong standard and that testimonial evidence is always preferred.

The trial court did not abuse its discretion in denying the motion to reconsider. The trial court denied the motion because the positions of the parties and facts had not changed. While Mr. Fuchs submitted a number of new supporting declarations, substantively those declarations provided similar information to that presented previously; there was nothing truly new. This was a tenable basis for denying the motion. The trial court did not abuse its discretion in concluding that reconsideration was unnecessary.

No. 33981-5-III
*Condrey v. Fuchs*

Finally, Mr. Fuchs cannot maintain an argument that the trial court erred in denying his request to hear live testimony. While he is correct that live testimony is generally preferred, he does not explain why he did not make the request for live testimony until the motion to reconsider. He also provides no authority suggesting that a trial court abuses its discretion by denying a motion for reconsideration based on a request for live testimony. This argument does not establish an abuse of discretion.

The judgment is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Korsmo, J.

WE CONCUR:

_____
Siddoway, J.

_____
Pennell, J.

10