IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Parenting and Support of B.H., | ) ) ) | No. 78712-8-I |
| A minor child. | ) ) | DIVISION ONE |
| HEATHER HELLAND, | ) ) | |
| Respondent, | ) ) | UNPUBLISHED OPINION |
| v. | ) ) | |
| DAVID ISAACSON, | ) ) | |
| Appellant. | ) | FILED: September 16, 2019 |

SCHINDLER, J. — David Isaacson appeals the superior court order of contempt. Because the plain and unambiguous language of the child support order and the parenting plan requires Isaacson to pay his proportionate share of the cost of day care and substantial evidence supports the contempt order, we affirm.

FACTS

Heather Helland is the mother and David Isaacson is the father of B.H. Helland returned to work in November 2012 after the birth of B.H. Helland's mother and father Barbara and Jim Helland took care of B.H.

The court entered an order of child support on August 29, 2014. Paragraph 3.15 of the child support order, "Payment for Expenses not Included in the Transfer Payment," states Helland "shall pay 58%" and Isaacson shall pay "42%" of "[w]ork

related day care." Paragraph 3.15 of the child support order states, "Payments shall be made to the provider of the service or mother if mother has paid the full cost of the activity. Payments shall be made within 10 days of receiving an invoice for the cost of the activity."

The court entered a final parenting plan on December 24, 2015. Paragraph 3.13.4 of the parenting plan, "Child Care," states:

> Any required work related child care provider shall be chosen by the mother, with full notice to the father of all contact information. Mother will provide all relevant cost information to validate that the cost is consistent with the current rates in her location. The cost shall be divided proportionate to their incomes.

In August 2016, the grandparents began charging Helland and Isaacson $600 per month to take care of B.H. Isaacson's proportional share of the day care expense was $252 per month. Isaacson paid his proportionate share of day care expenses.

In February 2017, Helland discussed with Isaacson the possibility of sending B.H. to a Catholic private school. In a May 11, 2017 e-mail, Isaacson told Helland, "I have to accept that I am not in a position to help pay for private school. If you are in a position to send her financially, I will certainly back your decision." On February 16, 2018, Helland sent Isaacson a text message about private school and day care expenses. The text message states:

> I am not asking you to pay any more then you currently are and because my . . . parents are so graciously willing to donate what you are giving them for child care (which is nothing in the reality of what you would be paying if we [didn't] have them) toward her education. . . . You are not being asked to pay anymore then you currently are.

In March 2018, the grandparents began charging $17.50 per hour to care for B.H. In accordance with the parenting plan, Helland notified Isaacson and his attorney

of the day care cost increase and provided documentation to show the increase was consistent with childcare expenses in the area. Isaacson responded, " '[Y]our proposal is not consistent with current rates in your location.' " Isaacson did not provide any documentation to support his assertion. Isaacson did not pay the increased amount but continued to pay $252.00 per month.

On May 18, 2018, Helland filed a motion for a contempt hearing. Helland alleged Isaacson was in contempt of paragraph 3.15 of the child support order and paragraph 3.13.4 of the parenting plan that required him to pay day care expenses. Helland submitted a declaration and exhibits[1] showing that she is the residential parent, she works inconsistent and long hours, and her work requires her to travel internationally "for up to a week at a time." Helland argued the $17.50 per hour rate the grandparents charged for day care is below the average cost of childcare services in her residential area and provided documentation for childcare rates and day care costs from providers in the greater Seattle area.

On May 21, the court entered an order directed to Isaacson to appear in court on June 8 to show cause why the motion for contempt should not be granted. The parties agreed to continue the hearing to June 18.

Isaacson submitted a declaration in opposition to the motion for contempt. Isaacson admitted he did not pay the increase in day care cost. Isaacson claimed the increase in day care costs was in retaliation for not agreeing to pay for private school,

---

[1] Exhibits 3 through 6 were inadvertently not filed in superior court. Helland refiled the contempt motion with the exhibits on February 28, 2019. Helland filed a motion to supplement the record under RAP 9.10 to include the refiled contempt motion. We granted the motion to supplement the record. Isaacson claims we should not consider exhibits 3 through 6. His argument is without merit. RAP 9.10 allows a party to supplement the record with materials that are already part of the record that was before the trial court. See also RAP 7.2(b) ("The trial court has authority to settle the record as provided in Title 9 of these rules.").

the grandparents did not to need an increase for the cost of day care, and the use of "nanny rates" instead of day care rates was unreasonable.

Helland submitted the documentation she provided to Isaacson that supported the increase. At the contempt hearing on June 18, Helland's attorney argued the "only issue with regard to the cost is if the cost of the daycare is within the customary charges in her area. That's clearly set forth in the parenting plan." Helland's attorney asserted, "There's nothing in the parenting plan that limits what she can do as far as designating who the daycare provider is. . . . The only qualification is with regard to costs being that they have to be commensurate with the surrounding area."

In response, Isaacson's attorney claimed the increase in day care costs was in retaliation for not agreeing to pay for private school. The attorney also argued the "parenting plan says daycare, it doesn't say nanny, and so I think that that is an issue there."

Isaacson did not argue that he was unable to pay the increased day care cost. Because Isaacson did not timely file his financial declaration with the court, the commissioner ruled she would not consider the untimely financial declaration in determining whether he was in contempt of the parenting plan and child support order regarding his ability to pay day care expenses.

The court ruled Isaacson violated the child support order and parenting plan by not paying his proportionate share of the day care expenses. The court concluded the "parenting plan very clearly gives Ms. Helland the power to choose the daycare provider" and "the order is pretty clear on its face. It says 'any.' " The court found Isaacson acted in bad faith in not paying his proportionate share of the day care

expenses.

The court entered an order of contempt on June 18, 2018. The court found the "failure to follow the [child support order] was intentional," Isaacson "didn't pay child day care costs as requested," and Isaacson "was able to pay day care costs." The court also found Isaacson is "able to follow the [child support order] now." The court found the "failure to follow the [parenting plan] was intentional" and Isaacson acted in bad faith for failing "to pay day care as charged by grandparents and paid by mother." The court found Isaacson is "able to follow the parenting/custody order now" even though "no financial evidence [was] timely submitted [at] [the] hearing." The court entered a judgment against Isaacson for the amount of past-due day care expenses plus interest and ordered him to pay attorney fees and costs and a $100 civil penalty. Isaacson appeals.

## ANALYSIS

Isaacson contends the court erred in finding him in contempt of the child support order and the parenting plan.

"Contempt" is an intentional disobedience of a lawful court order. RCW 7.21.010(1)(b). "[A] finding that a violation of a previous court order was intentional is required for a finding of contempt." Holiday v. City of Moses Lake, 157 Wn. App. 347, 355, 236 P.3d 981 (2010).

We review the commissioner's finding of contempt for abuse of discretion. In re Marriage of James, 79 Wn. App. 436, 439-40, 903 P.2d 470 (1995). We will not disturb the sanctions imposed for contempt absent a clear showing of abuse of discretion. Yamaha Motor Corp. v. Harris, 29 Wn. App. 859, 866, 631 P.2d 423 (1981). A court

5

abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Katare, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). A court bases its decision on untenable reasons if it uses an incorrect standard or the facts do not meet the correct standard. In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997).

The court must make findings of fact that set forth the basis for the finding of contempt. James, 79 Wn. App. at 440. We review findings of fact for substantial evidence. In re Marriage of Rideout, 150 Wn.2d 337, 352, 77 P.3d 1174 (2003). "Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise." Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). Unchallenged findings are verities on appeal. Merriman, 168 Wn.2d at 631.

Isaacson does not challenge specific findings of fact on appeal. Isaacson argues (1) the trial court erred by interpreting the language of the parenting plan that states, "Any required work related child care provider shall be chosen by the mother"; (2) he did not violate the parenting plan provision regarding day care because the provision states only Helland has the authority to choose the childcare provider;[2] and (3) the trial court erred in failing to determine whether the new day care rate was necessary and reasonable under RCW 26.19.080(4).[3]

In determining whether the facts support finding contempt, the court "must strictly construe the order alleged to have been violated, and the facts must constitute a plain

---

[2] The remainder of the parenting plan provision regarding childcare expenses requires the cost to be "divided proportionate to their incomes." Isaacson did not pay his proportionate share of the childcare expenses, thus is in violation of the parenting plan.

[3] Isaacson's argument that RCW 26.09.160(1) applies to only the basic child support is without merit. Isaacson also assigns error to disregarding his untimely filed financial declaration. Isaacson does not discuss this assignment of error in his opening brief and assigns error to the admission of hearsay. The court will not consider an assignment of error where there is no argument in the brief in support thereof. Johnson Serv. Co. v. Roush, 57 Wn.2d 80, 89, 355 P.2d 815 (1960).

6

violation of the order." In re Marriage of Humphreys, 79 Wn. App. 596, 599, 903 P.2d 1012 (1995). The moving party bears the burden of establishing contempt by a preponderance of the evidence. James, 79 Wn. App. at 442. "This showing must include evidence from which the trial court can find that the offending party has acted in bad faith or engaged in intentional misconduct or that prior sanctions have not secured compliance with the plan." James, 79 Wn. App. at 442. If the moving party establishes a prima facie case, "the responding parent must rebut that showing with evidence of legitimate reasons for failing to comply with" the relevant order. James, 79 Wn. App. at 442; RCW 26.09.160(4); RCW 26.18.050(4). "The trial court will then weigh the evidence" and determine whether contempt exists. James, 79 Wn. App. at 443.

The plain and unambiguous language of the parenting plan gives Helland the authority to choose a childcare provider and pay current rates supported by "relevant cost information." The uncontroverted record shows Helland provided documentation to Isaacson supporting payment to the grandparents that was consistent with current rates in her location. The cost for day care services in her area, including rates for a nanny, ranged from $15.00 to $35.00 an hour. Helland agreed to pay the grandparents $17.50 an hour. Isaacson did not object to the admission of the documentation at the hearing on contempt. The record shows the evidence of day care rates Isaacson presented was not current. The plain and unambiguous language of the parenting plan requires Isaacson to pay his proportionate share of the cost of day care.

Contrary to Isaacson's assertion, Helland presented evidence that the charges were reasonable and necessary. Helland's mother submitted a declaration describing

7

the care provided for B.H. There was also no dispute that because of the demands of her work, Helland needs childcare for B.H.

Substantial evidence supports the court's finding that paying the grandparents $17.50 an hour is reasonable and necessary and Isaacson violated the child support order and the parenting plan by not paying his proportionate share of the cost of day care.

Isaacson claims the court did not enter a finding of bad faith. RCW 26.18.050 requires a showing of willful or intentional disobedience. In the contempt order, the court specifically found Isaacson did not obey the child support order or the parenting plan by not paying the additional cost of day care and the "failure to follow the order/s was intentional." The contempt order also states Isaacson "acted in bad faith" because he "[f]ailed to pay day care as charged by grandparents and paid by mother."

For the first time on appeal, Isaacson argues the court improperly awarded prejudgment interest on the unpaid amount of the day care expenses because the amount is not liquidated damages.

A prevailing party is generally entitled to prejudgment interest, provided the claimed amount of damages is liquidated. In re Marriage of Rockwell, 157 Wn. App. 449, 454, 238 P.3d 1184 (2010). The claimed amount "is liquidated if 'data in the evidence makes it possible to compute the amount with exactness, without reliance on opinion or discretion.' " Rockwell, 157 Wn. App. at 454 (quoting Lakes v. von der Mehden, 117 Wn. App. 212, 217, 70 P.3d 154 (2003)). Here, the evidence establishes $17.50 per hour for the cost of day care is a liquidated amount.

Both parties request attorney fees on appeal. Isaacson requests fees under RCW 26.09.140 and RCW 26.09.160(7). RCW 26.09.140 permits an award of fees in consideration of "the financial resources of both parties." Determining whether a fee award is appropriate requires the court to consider the parties' relative ability to pay and the arguable merits of the issues raised on appeal. In re Marriage of Leslie, 90 Wn. App. 796, 807, 954 P.2d 330 (1998). RCW 26.09.160(7) provides that "if the court finds the [contempt] motion was brought without reasonable basis, the court shall order the moving party to pay to the nonmoving party, all costs, reasonable attorneys' fees, and a civil penalty of not less than one hundred dollars." We deny Isaacson's request for attorney fees on appeal.

Helland requests fees under RCW 26.09.160(1). RCW 26.09.160(1) provides for a mandatory award of attorney fees and costs "incidental in bringing a motion for contempt." Subject to compliance with RAP 18.1, Helland is entitled to an award of attorney fees and costs under RCW 26.09.160(1). See Rideout, 150 Wn.2d at 358-59.

We affirm the order of contempt and award Helland reasonable attorney fees and costs subject to compliance with RAP 18.1.

WE CONCUR:

Mann, ACJ

9