IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VERENA CORREIA RICE,<br><br>               Appellant,<br><br>          v.<br><br>BRADLEY WILLIAM RICE,<br><br>               Respondent. | No. 81604-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Verena Rice accused her husband, Bradley Rice, of physically, emotionally, and sexually abusing her. Verena[1] petitioned for a Domestic Violence Protection Order (DVPO), but the commissioner denied the petition after determining that a preponderance of the evidence did not support a finding of domestic violence. Verena asked the superior court to revise the order, but the court declined to do so, concluding that Verena's testimony was not credible. Verena appeals the denial of the motion to revise.

We conclude that substantial evidence supports the court's finding that Verena's testimony was not credible and that the court did not abuse its discretion in declining to issue a DVPO. We further conclude that the court's written findings were sufficient to meet the requirements of RCW 26.50.060(7). We therefore affirm.

---

[1] Because the parties share a last name, we refer to them by their first names for clarity.

Citations and pin cites are based on the Westlaw online version of the cited material.

FACTS

Verena and Bradley met after playing an online video game together. On April 3, 2015, Verena flew from her home in Brazil to meet Bradley in Washington. Verena and Bradley married on July 4, 2015, and have two children together.

On July 15, 2019, Verena filed a DVPO petition for her and the two children, saying that Bradley would kill her and mistreat the children if protection was not granted. She claimed that he had sexually and physically assaulted her many times. She alleged that he had forced her to take higher doses of anxiety medicine than prescribed and threatened to take the children away.

Verena provided medical records from her doctor to support her allegations. The records state that on July 11, 2019, Verena reported that her husband abused her and raped her, had sex with her while she was sleeping, and threatened her with deportation. They also refer to a "[s]uspicion of DV [(domestic violence)] at prior visits" but state that Verena had been "unable to talk about it." Verena also referred to these records, which reference treatment for hemorrhoids, to support her claim that she had hemorrhoids, anal tears, and bleeding that needed treatment as a result of Bradley's rape.

Verena also supplied statements from third parties to support her claims. Aline Gardner stated that she "noticed that Verena was in a domestic violence [situation] since [she] met her, 3 years ago." She stated that over the past three years, Verena had told her that Bradley would lock her and the kids in the car and turn on loud music or turn the heat up high, that he would force her to smoke

cannabis, and that she was afraid to die. Karina Wiggins supplied a statement that Verena had reported domestic abuse to her and that Wiggins had observed Verena in a state of fear.

In addition to general claims that Bradley was abusive, Verena discussed several specific incidents in her initial petition and subsequent declarations. For instance, in her DVPO petition, Verena alleged that on the first day they met in person, in April 2015, Bradley strangled her, took her passport, and told her that she would never go back to Brazil. In subsequent declarations, she claimed that when he picked her up at the airport, he told her he had a gun and that in addition to strangling her, he hit her with his belt and hands and raped her in a hotel room. Bradley denied these claims and presented a statement from his father that when he went to meet Verena at the airport, he was excited and brought flowers. Bradley's grandmother also submitted a statement that Verena and Bradley lived with her at the beginning of their relationship and were very happy.

The parties also discussed a dispute on July 11 and 12, 2019. On July 11, the parties went shopping with the children and Verena's mother. Verena claimed that Bradley got mad at Verena's mother and attempted to slam the trunk on her hands. She further claims that once inside the car, he locked the doors and turned the heat up, causing Verena to feel suffocated and the children to cry. Verena's mother submitted a declaration stating that Bradley had slammed the trunk and she had to remove her hand quickly to avoid being crushed by the trunk door, and that he had then turned on the heater and did not

3

open the doors. Bradley stated that Verena lied about slamming the trunk and trying to suffocate the family with the heat, and that she had been upset with him for not turning the air conditioning on.

Verena claimed that on July 12, 2019, Bradley was very aggressive, pushed her and pulled her hair, and left with one of their children. When he had not returned within 24 hours, she filed a police report with the Bothell Police Department. The police report indicated that a domestic violence verbal incident had taken place, but no crime had occurred.

Bradley disputed all of Verena's claims and explained that his actions stemmed from concerns about Verena's mental health. To support his claims, Bradley introduced evidence of Verena's previous mental health issues that resulted in her involuntary hospitalization and in the involvement of child welfare. After Bradley left with their child, the record indicated that he texted Verena, stating, "'[H]opefully you get the proper treatment and we can come back home.'"

After Verena filed her DVPO petition, she and the children were granted a temporary protection order on July 16, 2019, until the hearing on the petition. The hearing was then continued, and the temporary order was reissued multiple times. On November 12, 2019, the temporary order was reissued and the hearing was continued to February 11, 2020, to allow the parties to participate in a DV assessment. However, on December 12, 2019, Verena had a mental health crisis and broke the windows, walls, and appliances in her apartment. The Kirkland Police Department detained and hospitalized Verena and placed the children, who had been bruised and cut by broken glass during the episode, into

protective custody. The Department of Children, Youth, and Families subsequently filed a dependency petition, giving the dependency court exclusive jurisdiction over the children. The dependency court signed an order for concurrent jurisdiction that allowed the family court commissioner to move forward with the DVPO hearing on February 11, but not to make any further orders affecting the children.

At the February 11 hearing, the commissioner noted that Verena had not yet participated in the DV assessment. Verena requested a continuance to complete the assessment, noting she had been unable to complete the assessment because of issues with childcare and transportation and then because of her hospitalization. The commissioner denied the continuance, reasoning that the DV assessment would focus on issues regarding the children, who were no longer under the court's jurisdiction. The commissioner dismissed the order for protection but instead granted mutual restraining orders between Bradley and Verena in the parties' marital dissolution proceeding.

Verena asked the superior court to revise the commissioner's order, rescind the restraining orders, and grant her a DVPO. On June 9, 2020, the court denied the motion for revision, finding that the commissioner had the authority to issue the mutual restraining orders, finding that "her testimony via declaration and petition [was] not creditable," and concluding that the commissioner's ruling was reasonable. The court also disagreed with Verena's argument that the commissioner applied an unfairly high standard to Verena because of her mental health history, explaining that it was rejecting Verena's

"argument that she is penalized for her mental health history." On June 30, the court amended its order, holding that the commissioner did not have authority to issue the restraining orders because the dissolution action was not before the commissioner. Accordingly, the court rescinded the portion of the order issuing restraining orders but left the remainder of the order unchanged. Verena appeals.

ANALYSIS

On appeal, Verena contends that the court erred in affirming the denial of the DVPO. She claims that the court erred in finding that Verena's testimony was not credible and in finding that Verena was not penalized for her mental health history. She also contends that the court erred by failing to write the particular reasons for the court's denial on the order as required by RCW 26.50.060(7). Because the court's findings are supported by substantial evidence and its order meets the requirements of RCW 26.50.060, we disagree and affirm.

Standard of Review

On appeal from a superior court's ruling on whether to modify the commissioner's order, we review the superior court's decision, not the commissioner's. In re Vulnerable Adult Petition for Knight, 178 Wn. App. 929, 936, 317 P.3d 1068 (2014). We review a court's decision on a motion to modify for an abuse of discretion. Maldonado v. Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). The court abuses its discretion if it makes its decision "on untenable grounds or for untenable reasons, or if its decision was reached by

applying the wrong legal standard." Id. Furthermore, "[w]e review the superior court's findings for substantial evidence," deferring to the trier of fact on questions of witness credibility, conflicting testimony, and persuasiveness of the evidence. Knight, 178 Wn. App. at 936-37. "Evidence is substantial if it is sufficient to persuade a fair-minded, rational person of the declared premise." Merriman v. Cokely, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). Findings may be supported by substantial evidence even if there is conflicting evidence. Id. Finally, we "review questions of law de novo." Knight, 178 Wn. App. at 937.

Denial of Motion To Revise

Verena contends that the court abused its discretion by denying her motion for revision and declining to grant the DVPO. She asserts that she produced sufficient evidence to establish the necessity for the protection order and that the court was improperly swayed by evidence concerning her mental health. We disagree.

"Any person" may file a petition for a DVPO "alleging that the person has been the victim of domestic violence committed by the respondent." RCW 26.50.020(1)(a). "Domestic violence" includes "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault," sexual assault, or stalking by one family member against another. Former RCW 26.50.010(3) (2015). "The harm caused by domestic violence can be physical or psychological." Rodriguez v. Zavala, 188 Wn.2d 586, 596, 398 P.3d 1071 (2017).

Here, the court did not abuse its discretion by declining to grant the

DVPO, because substantial evidence supported its finding that Verena's testimony was not credible. Bradley claimed that Verena was fabricating the domestic violence allegations in order to gain custody of the children. He supplied evidence of this claim, including a signed statement from his sister that she "heard Verena say that she was going to have her mother hit her and then call the police and say" Bradley had hit her. Furthermore, Bradley claimed that Verena had previously made similar claims to police in December 2018. He claimed that she told police Bradley hit her face and raped her, leading police to question him, but that after receiving treatment, Verena recanted her statements. He introduced evidence that Verena fabricated these claims after receiving bad news at an immigration hearing because her lawyer told her it would improve her immigration case. This is substantial evidence that could convince a fair-minded person that Verena was not credible, and we "may not disturb findings of fact supported by substantial evidence." Merriman, 168 Wn.2d at 631. And, although Verena disputes this determination, we ultimately "defer to the trier of fact on the persuasiveness of the evidence[ and] witness credibility."[2] Knight, 178 Wn. App. at 937.

_____

[2] Verena notes that the court was not permitted to consider evidence that Bradley submitted after the commissioner entered its order, and which Bradley discusses again on appeal. We agree. On a motion to revise a commissioner's order, "the superior court is limited to the evidence and issues presented to the commissioner." Goodell v. Goodell, 130 Wn. App. 381, 389, 122 P.3d 929 (2005). Although the superior court asked about this evidence in the hearing on the motion to modify, Verena correctly noted that the evidence was not properly before the court. There is no evidence in the record that the superior court ultimately considered the new evidence in making its decision, and it would be improper for us to do so now.

Because there is sufficient evidence to support the trial court's finding that Verena's statements are not credible, the trial court did not abuse its discretion in denying the DVPO. There is no significant evidence of domestic violence in this case that does not depend on Verena's credibility—the majority of the corroborating evidence that Verena provided depended on Verena's statements to friends, doctors, and police, and most of these disclosures took place in the days before Verena filed the petition for the DVPO. There is significant conflicting evidence in the record, and it is not our role to reweigh the importance of the evidence. Because there is substantial evidence that Bradley did not commit domestic violence, we must affirm the court's order.

Verena disagrees and contends that the court improperly discredited her testimony because of Bradley's allegations regarding her mental health. Verena points to evidence contradicting Bradley's claims about her mental health and contends that mental health issues do not undermine her credibility or establish a tendency to fabricate claims of domestic abuse. We agree that it would be improper to discredit claims of domestic violence purely on the presence of mental health issues. Indeed, people who suffer from mental health disorders are more likely to be victims of domestic violence than people who do not. Courtney Cross, Reentering Survivors: Invisible at the Intersection of the Criminal Legal System and the Domestic Violence Movement, 31 BERKELEY J. GENDER L. & JUST. 60, 83 (2016). In this case, evidence that Verena suffered from paranoid delusions might be relevant as a possible explanation for her friends' statements that Verena appeared frightened, but it would not be sufficient to establish that

she fabricated stories of sexual assault. However, as discussed above, there was substantial evidence in the record from which the court could conclude that Verena's testimony was not credible without relying on evidence of her mental health diagnoses. There is no evidence that the court placed improper weight on Verena's mental health. To the contrary, the court's statement that Verena was not "penalized for her mental health history" indicates that the court gave the proper weight to this evidence.

Thus, substantial evidence supported the court's findings, and we conclude that the court did not abuse its discretion by denying the motion to revise.

Inclusion of Written Reasons for Denial as Required by RCW 26.50.060

Verena also contends that the superior court erred by failing to state the reasons for its denial of the DVPO, as required by RCW 26.50.060(7). We disagree and hold that the court met this requirement.

RCW 26.50.060(7) requires that if the court "declines to issue an order for protection," it must "state in writing on the order the particular reasons for the court's denial." We considered this requirement in Maldonado, in which the superior court granted a DVPO only to one of the parties' three children on the basis that the only allegations in the petition related to that child. 197 Wn. App. at 791. We concluded the court's denial of the DVPO to the other two children triggered RCW 26.50.060's requirement of written findings and that the court's

written explanation did not suffice because there were in fact allegations concerning the other children. Id. at 790-91. We noted that this lack of findings hampered our review, because "[w]ithout written reasons to indicate how the trial court evaluated the evidence, it is unclear why the court granted protection" for only one child. Id. at 790-92.

Here, the trial court provided sufficient reasoning for its denial. The court's order denying the motion for revision stated that Verena's "testimony via declaration and petition were not creditable." In denying the motion to revise, the court also adopted the commissioner's finding that "[a] preponderance of the evidence has not established that there is domestic violence." RCW 2.24.050; see In re the Marriage of Williams, 156 Wn. App. 22, 27-28, 232 P.3d 573 (2021) ("A revision denial constitutes an adoption of the commissioner's decision and the court is not required to enter separate findings and conclusions."). As discussed above, the court's determination that Verena was not credible is a sufficient basis to conclude that DV was not established, because Verena's statements formed the bulk of the evidence of DV. The findings therefore sufficiently explain how the court reached its decision as required by RCW 26.50.060(7).

Because the trial court made findings that were supported by substantial evidence, it did not abuse its discretion in denying the order, and it provided

11

sufficient reasoning for its decision, we affirm.

_____
Smith, J.

WE CONCUR:

_____          _____
                                 Chun, J.