IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| SASHA SUGABERRY,<br><br>               Appellant,<br><br>        v.<br><br>YWCA SEATTLE,<br><br>               Respondent. | No. 81580-6-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

ANDRUS, A.C.J. — In October 2018, Sasha Sugaberry sought emergency shelter at the YWCA Seattle. When she left the shelter to attend an out-of-state conference, the YWCA concluded Sugaberry had abandoned the personal belongings she left behind and disposed of them in accordance with its policies. Sugaberry sued YWCA for conversion of this personal property. The trial court found that Sugaberry failed to prove her claim of conversion. We affirm.

FACTS

The YWCA is a nonprofit organization focused on the needs of women in crisis. The YWCA operates a number of programs, including an emergency domestic violence shelter. This shelter provides short-term emergency housing

for survivors of domestic violence for 45 days.  Residents have their own rooms and meet regularly with advocates for counseling and crisis intervention.

Before entering the shelter, prospective YWCA clients undergo screening and intake procedures.  Initial screening occurs telephonically via the YWCA's crisis line.  Shelter advocates explain to potential clients that, if they choose to enter the shelter program, they cannot bring too many personal belongings because space is limited and each room is small.

Clients next participate in an in-person intake appointment.  During intake, YWCA advocates explain the expectations of the shelter, give the client a tour, and have the client fill out intake paperwork, including a set of shelter rules entitled "Resident Rights and Responsibilities."  Each client is required to initial each of the components to indicate an acknowledgement of the rules.  One relevant provision is the nightly curfew.  Due to safety concerns, the YWCA requires clients to return to the shelter by 10:00 p.m.  If clients fail to return or contact YWCA staff within 24 hours, the client is removed from the "daily room log" and must obtain the director's approval before being allowed to return to the shelter.  If the client fails to contact the YWCA within this 24-hour period, the YWCA disposes of any belongings left behind.

On September 6, 2018, Sugaberry sought emergency shelter at the YWCA.  Domestic violence advocate Dominique Scott conducted Sugaberry's initial phone screening and in-person intake.  During her intake, Sugaberry signed the Rights and Responsibilities form and agreed to be bound by the YWCA's policies.

Sugaberry stayed at the shelter until October 18, 2018. Sugaberry informed staff that she would be traveling and requested an extension of her stay at the shelter. According to the YWCA witnesses, Sugaberry's request was denied and she was informed that she would not be permitted to leave her belongings at the shelter while she was gone. Sugaberry, however, testified that the YWCA granted her request to extend her stay in the shelter and gave her permission to leave her personal belongings in her room until she returned from an out-of-state trip.

When Sugaberry left on October 18, she left personal belongings at the shelter. When she did not return within 24 hours, the YWCA deemed the belongings abandoned and disposed of them. The YWCA staff testified that they did not contact Sugaberry or attempt to reach her through her emergency contact because Sugaberry had informed the YWCA that she was leaving and had been advised to take her belongings with her.

In July 2019, Sugaberry filed a complaint alleging conversion of her personal property. On June 29, 2020, the trial court held a bench trial. Sugaberry appeared pro se. The trial court heard the testimony of five witnesses: Sugaberry, her witness, Marsha Armstrong, and three YWCA staff members: Doris O'Neal, Dominique Scott, and Jeanice Hardy. The trial court found the three YWCA witnesses were credible. It also found that Sugaberry had signed the YWCA documentation acknowledging its policies and that she had been provided verbal warnings that her belongings would be disposed of if she was absent for more than 24 hours. The court concluded that Sugaberry failed to prove that the disposal of the items she left behind was unjustified or that the YWCA willfully interfered with

her possession of this property. It also concluded that Sugaberry had presented no evidence to establish the value of the items allegedly converted. Accordingly, the trial court dismissed the case with prejudice. Sugaberry appeals.

ANALYSIS

Sugaberry's arguments on appeal are difficult to follow. The YWCA contends that Sugaberry has failed to cite authority or provide meaningful analysis sufficient to warrant our consideration. There is merit to this argument.

As a pro se litigant, Sugaberry is held to the same standard as an attorney and must comply with all procedural rules on appeal. In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). In accordance with these rules, an appellant must provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." RAP 10.3(a)(6). Failure to comply with procedural rules may preclude review. State v. Marintorres, 93 Wn. App. 442, 452, 969 P.2d 501 (1999). Similarly, arguments that are not supported by references to the record, meaningful analysis, or citation to pertinent authority need not be considered. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). "It is not the responsibility of this court to attempt to discern what it is appellant may have intended to assert that might somehow have merit." Port Susan Chapel of the Woods v. Port Susan Camping Club, 50 Wn. App. 176, 188, 746 P.2d 816 (1987).

Sugaberry has failed to identify evidence in the record supporting many of her factual allegations and she has failed to provide citations to authority for many

of her legal arguments.[1] We will not address these arguments on their merits. But we can parse out some of Sugaberry's assignments of error and will address them as thoroughly as we can.

Evidentiary Errors

Sugaberry first argues that the trial court made a number of evidentiary errors. Particularly, she contends the court erred in admitting two exhibits at trial, in excluding witness testimony, and in excluding evidence related to Sugaberry's damages. None of these contentions is supported by the record.

"Admissibility of evidence is within the broad discretion of the trial court and will not be reversed on appeal absent a showing of manifest abuse of discretion." In re Parentage of J.H., 112 Wn. App. 486, 495, 49 P.3d 154 (2002). "Discretion is abused if it is based on untenable grounds or for untenable reasons." Id.

Sugaberry contends the trial court "erroneously admitted evidence over objection, and the inadmissible evidence prejudiced" her case. The trial court admitted two documents over Sugaberry's objection. First, the court admitted the Rights and Responsibilities form, to which Sugaberry objected on the basis that the document was fraudulent because the signature was not hers. She told the trial court that the document she signed at her intake had been longer, more like a lease for an apartment, and that she could not have written her name so "eloquently" because of her anxiety disorder. Second, the trial court admitted

---

[1] For example, Sugaberry argues the trial court erred by relying on the wrong case file during trial. She makes no citation to the record and we can find nothing to support this statement. Similarly, she assigns error to the trial court's finding that there was no genuine issue of material fact. However, the court made no such finding and Sugaberry was afforded a full and fair trial to litigate her dispute.

Scott's electronic case notes over Sugaberry's objection. The entire basis of Sugaberry's objection was that it was "blatantly untrue." The court noted that appropriate foundation had been laid for the admission of the document and that Sugaberry would have an opportunity to cross-examine the witnesses regarding the accuracy of the document.

Sugaberry cites no rules of evidence nor any case law suggesting that her objections were legally valid and she offers no argument to support the contention that the trial court abused its discretion in overruling her objections. The YWCA laid a proper foundation for each exhibit and Sugaberry was afforded an opportunity to cross-examine the witnesses regarding the veracity of the documents. We can discern no error.

Sugaberry further contends the trial court erroneously refused to admit relevant evidence and witness testimony. Specifically, she contends the trial court excluded the testimony of Marsha Armstrong "on the grounds that YWCA was not aware of her existence until the day of trial." This is unsupported by the record.

During a pretrial conference held just a week before trial, Sugaberry informed the court that she planned on calling Armstrong as a witness. On the day of trial, the YWCA moved to exclude Armstrong's testimony because of the late witness disclosure. Sugaberry responded that Armstrong would testify as a witness of "the facts of systemic theft" and abuse at another shelter. The trial court initially granted the YWCA's motion on the basis that this proffered testimony was not relevant.

After opening arguments, Sugaberry asked the court if Armstrong could testify about the luggage Sugaberry used when she was away from the shelter on her out-of-state trip. The YWCA objected again, arguing such testimony was irrelevant. The trial court overruled this objection and allowed Armstrong to testify as to Sugaberry's luggage.

Limiting Armstrong's testimony in such a way was not an abuse of discretion. Any testimony Armstrong might have presented regarding incidents of theft at other emergency shelters was irrelevant to the issue of whether the YWCA converted Sugaberry's property. Sugaberry herself acknowledged that the YWCA was neither related to, nor responsible for, the other shelter. "Evidence which is not relevant is not admissible." ER 402. Thus, the court did not err.

Next, Sugaberry seems to contend that the trial court miscalculated the damages by not allowing her to present evidence as to the value of the items lost. The record here demonstrates that Sugaberry offered no evidence of damages. Sugaberry testified that she had lost a number of personal belongings, such as a safe, electronic devices, and family memorabilia, among other things. But she offered no evidence to support the purported value of those items. During closing argument, Sugaberry made a conclusory statement that "[a] woman's wardrobe is very pricey" and that it would cost "in excess of $50,000" just to replace her clothing.

There is no evidence in the record that the trial court denied any attempt by Sugaberry to admit evidence related to damages. Therefore, the court could not have abused its discretion.

<u>Motion to Compel Discovery</u>

Sugaberry argues she was "denied any and all access to evidence and witness via subpoena, subpoena duces tecum or professional communication." The record does not support this argument either.

As with evidentiary decisions, the decision to grant or deny a motion to compel discovery is within the discretion of the trial court, and we will not reverse the decision absent an abuse of discretion. <u>Clarke v. State Att'y Gen.'s Office</u>, 133 Wn. App. 767, 777, 138 P.3d 144 (2006).

On June 1, 2020, Sugaberry sent multiple emails to counsel for the YWCA. In those emails, Sugaberry stated that she had sent subpoenas to the YWCA, asked to confer with counsel to "determine the integrity of the defendant by asking for criminal background check[s] and human resource checks," and asked for various discovery, including human resources records and database records. The next day, Sugaberry moved to compel discovery.

On June 5, 2020, Sugaberry filed a motion for the issuance of a subpoena and subpoena duces tecum. Sugaberry noted her intention to "call YWCA SEATTLE STAFF AND ADVOCATES AND TWO RESIDENTS" at trial and requested that the YWCA produce the identified documents. In an addendum to this document, Sugaberry requested video footage, database information pertaining to Sugaberry's stay at the YWCA, and "all personnel records for factual evidence of criminal background check YWCA of Seattle relied upon for the hiring of each witness listed to testify under oath."

On June 10, 2020, Sugaberry sent counsel for the YWCA an email identifying, by description only, individuals allegedly associated with the YWCA that she sought to have present at trial. The YWCA was only able to identify one of the witnesses described.

Because the discovery deadline had passed, the trial court denied the motion to compel but granted Sugaberry's request for a trial subpoena for former YWCA employee Bridgette LaRock. The court informed Sugaberry that it was her responsibility to serve the subpoena on LaRock. Sugaberry ultimately made no showing that she served the subpoena on LaRock and LaRock did not appear for trial.

The trial court did not abuse its discretion in denying the motion to compel discovery. Pursuant to King County Local Civil Rule (KCLCR) 37(g), all discovery "must be completed no later than 49 calendar days before the assigned trial date." Any discovery requests that do not comply with that rule will not be enforced. KCLCR 37(g). In this case, the discovery deadline was May 11, 2020. Sugaberry filed her motions for discovery well after the deadline had passed and the trial court did not abuse its discretion in denying her motions.

Sufficiency

Finally, Sugaberry contends that the trial court's conclusions were not adequately supported by its findings. We disagree.

We review the trial court's findings of fact for substantial evidence. Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). Substantial evidence is that which would persuade a fair-minded, rational person of the

declared premise.  Id.  A reviewing court will not disturb findings of fact that are supported by substantial evidence, even if there is conflicting evidence.  Id.

While she makes no clear argument to support this assignment of error, Sugaberry seems to reiterate each of her arguments from trial.  For example, she argues that the YWCA authorized her to leave her belongings behind and made assurances that they would be stored safely.  But the trial court rejected Sugaberry's testimony as not credible.  We defer to the trial court on determinations of "the persuasiveness of the evidence, witness credibility, and conflicting testimony."  In re Knight, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014).

Here, the testimony of the YWCA's witnesses, which the trial court found credible, provided substantial evidence to support the trial court's findings that the YWCA told Sugaberry she could not leave her belongings behind.  Scott testified that Sugaberry agreed to be bound by the YWCA's policies when she sought emergency shelter there.  O'Neal testified that Sugaberry left items behind when she left the shelter and that the YWCA disposed of those abandoned belongings in accordance with its policy.  Finally, both Scott and O'Neal testified that Sugaberry had been verbally informed that she was not permitted to leave her belongings.

These findings support the trial court's conclusion that Sugaberry failed to prove "that the disposal of the items left behind at the shelter was unjustified or that the YWCA willfully interfered with Plaintiff's possession of her property." Sugaberry advances no argument that the trial court misapplied the law of conversion or the affirmative defenses of abandonment and consent.

The trial court did not err by dismissing Sugaberry's complaint with prejudice.

We affirm.

WE CONCUR:

Andrus, A.C.J.

Coburn, J.

Appelwick, J.